57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Walter A. TOLLIVER, Petitioner-Appellee,
v.
William DALLMAN, Respondent-Appellant.
 No. 94-3491.
 United States Court of Appeals, Sixth Circuit.
 June 16, 1995.
 
 On Appeal from the United States District Court, for the Southern District of Ohio, No. 92-00845; George C. Smith, Judge.
 S.D.Ohio
 REVERSED.
 Before: MERRITT, Chief Judge, KEITH and WELLFORD, Circuit Judges.
 DAMON J. KEITH, Circuit Judge.
 
 
 1
 The Respondent-Appellant, William Dallman ("Dallman") appeals the district court's granting of the Petitioner-Appellee's, Walter A. Tolliver ("Tolliver"), petition for a writ of habeas corpus, pursuant to 28 U.S.C. Sec. 2254. Because we find the actions of the trial court were harmless error, we REVERSE the district court's judgment granting Tolliver's petition for a writ of habeas corpus.
 
 
 2
 I. Statement of Facts and Procedural History
 
 
 3
 An Ohio Grand Jury for Franklin County returned a two-count indictment against Tolliver. Count One charged Tolliver with aggravated robbery, in violation of Ohio Revised Code ("ORC") Sec. 2911.01. Count Two charged him with felonious assault with a physical harm specification, in violation of ORC Sec. 2903.1.
 
 
 4
 Following a jury trial, Tolliver was found guilty of aggravated robbery and not guilty of felonious assault. He was sentenced by the trial court to eight to twenty five years in prison.
 
 
 5
 Tolliver made two motions which the trial court viewed as requests for substitute counsel. The trial court denied both requests.
 
 
 6
 Tolliver's first request for the substitution of counsel was made on the day trial was scheduled to start. Tolliver's counsel stated to the court that in his opinion Tolliver should have accepted the state's plea bargain offer of one count of aggravated robbery with a sentence of 7 to 25 years and that there was no defense to the charges in the indictment. "I have advised [Tolliver] that he has no defense, that I cannot win this case under any circumstances, and that the choice to go to trial rests on Mr. Tolliver's shoulders." (J.A. 50). Tolliver maintained his desire to proceed to trial, but indicated he felt he was being railroaded. Tolliver stated he wanted the court to appoint him a different attorney. Tolliver told the trial court his current counsel refused to place him in an identification line-up and would not allow him to take a lie detector test. The trial court denied Tolliver's request for substitute counsel.
 
 
 7
 Tolliver's second request came at the close of the state's case. Tolliver's counsel told the trial court he believed Tolliver would commit perjury if he were to take the stand. He told the trial court, "I do not believe that anything Mr. Tolliver will testify to will be the truth." (J.A. at 97). At this point, Tolliver again expressed his dissatisfaction with court appointed counsel and stated his desire to have the trial court appoint him a new attorney. The trial court once again denied the request for substitute counsel.
 
 
 8
 Tolliver appealed his conviction to Ohio's Tenth District Court of Appeals. The appeal claimed, inter alia, he was denied his Sixth Amendment right to effective counsel. The Ohio Court of Appeals affirmed Tolliver's conviction.[1]
 
 
 9
 Tolliver appealed to the Ohio Supreme Court on the same grounds. The Ohio Supreme Court dismissed Tolliver's appeal sua sponte because no substantial constitutional question existed.
 
 
 10
 Tolliver then filed a petition for writ of habeas corpus in federal court, pursuant to 28 U.S.C. Sec. 2254. Tolliver's petition alleged the actions of his court appointed counsel at trial denied him his sixth amendment right to the effective assistance of counsel. His petition asserted the trial court violated his sixth amendment right to effective assistance of counsel when it failed to adequately inquire into petitioner's requests for appointment of substitute counsel.
 
 
 11
 The district court issued an order conditionally granting the writ of habeas corpus with regard to Ground One, finding the trial court violated Tolliver's Sixth Amendment right to effective assistance of counsel by failing to adequately inquire into his requests for appointment of substitute counsel, and denied the rest of the grounds in his petition. The state submitted a motion to alter or amend judgment which was denied by the district court.
 
 
 12
 The state filed this timely appeal.
 
 II. Discussion
 
 13
 The state argues the district court erred in granting Tolliver's writ of habeas corpus petition. The state claims the record from trial clearly indicates the trial court conducted an adequate investigation into Tolliver's complaints about his attorney. In the alternative, the state claims that even if the trial court's inquiry was lacking, any error which resulted was harmless.
 
 
 14
 We review de novo the district court's order granting the writ of habeas corpus. Wright v. Dallman, 999 F.2d 174, 178 (6th Cir.1993).
 
 
 15
 The Sixth Amendment right to counsel entitles a defendant to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 686 (1984). This right has not been extended to allow an indigent defendant the counsel of his choice. United States v. Iles, 906 F.2d 1122, 1130 (6th Cir.1990). "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate good cause to warrant substitution of counsel." Id.
 
 
 16
 The First Circuit has established a three-prong test to establish when a defendant has shown "good cause." United States v. Allen, 789 F.2d 90, 92 (1st Cir), cert. denied. 479 U.S. 846 (1986). A reviewing court is to consider the denial of a defendant's motion for substitute counsel based on: 1) the timeliness of the defendant's motion; 2) the adequacy of the trial court's inquiry into the defendant's complaint; and 3) whether the conflict between the defendant and his/her counsel is so great it has resulted in a total lack of communication preventing an adequate defense. Id.
 
 
 17
 This Circuit and the State of Ohio have accepted the proposition a trial court must make some inquiry into a defendant's complaints when there is a request for the substitution of appointed counsel. See United States v. Jennings, 945 F.2d 131, 132 (6th Cir.1991); Iles, 906 F.2d at 1130; State v. Pruitt, 18 Ohio App.3d 50, 57 (1984); State v. Deal, 17 Ohio St.2d 17, 19 (1969). The Iles court held "[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel be appointed, the trial court clearly has a responsibility to determine the reasons for the defendant's dissatisfaction with his current counsel." Iles, 906 F.2d at 1130. Inquiry by the trial court aids in determining whether "good cause" has been shown. Further, it helps ease the defendant's mistrust of the system, preserves the integrity of the trial and fosters confidence in the jury verdict. Id.
 
 
 18
 We note that earlier decisions of panels of this Court have contended with the issue of whether the right to counsel of choice should be governed by a prejudice standard on collateral review, relying on Strickland v. Washington, 466 U.S. 668 (1984). See, e.g., Morton v. Foltz, 782 F.2d 1042 (6th Cir.1985) (unpublished decision); Wilson v. Mintzes, 781 F.2d 275 (6th Cir.1985). Other panels have not addressed the prejudice issue at all because they found the trial court did not abuse its discretion in denying the request for substitute counsel. See, e.g., Jones v. Tennessee, 805 F.2d 1034 (6th Cir.1986) (unpublished decision); Scott v. Dahlberg, 1990 U.S.App. LEX 18632 (Oct. 19, 1990) (unpublished decision). We have identified only one case that performed a prejudice analysis under Strickland, concerning the failure of the trial court to appoint substitute counsel. The analysis, however, was dicta as the Court determined that the trial court did not abuse its discretion in failing to appoint new counsel because the defendant had failed to prove any "irreconcilable differences" between himself and his attorney. Krist v. Foltz, 804 F.2d 944 (6th Cir.1986).
 
 
 19
 The Supreme Court has not directly ruled on the specific issue of whether a finding that a trial court erred in denying a request for new counsel is subject to a harmless error or prejudice analysis, or whether it would require per se reversal as found by the district court here. The Supreme Court, however, has increasingly moved in recent years toward expanding those cases under which a harmless error analysis applies to collateral appeals. See, e.g., O'Neil v. McAninch, 115 S.Ct. 992 (1995), Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993). The earlier panels confronting this issue did not have the benefit of Brecht or O'Neil to guide their analysis. In light of recent Supreme Court rulings it seems appropriate to extend the harmless error analysis to counsel of choice cases.
 
 
 20
 In the instant case, the federal district court found the state trial court did not comply with the standards established by the First Circuit in Allen. This federal district court found 1) Tolliver's motions were timely; 2) the state trial court did not adequately inquire into Tolliver's complaints about his counsel; and 3) the conflict between Tolliver and his counsel was so great he was prevented from receiving an adequate defense. We find, though there was error on the part of the trial court in failing to conduct an inquiry into Tolliver's reasons for requesting substitute counsel, this error was harmless and the district court should have denied the petition for the writ.
 
 
 21
 It is true Tolliver was timely in his requests to the trial court for substitute counsel and the trial court provided no more than a cursory investigation into Tolliver's voiced dissatisfaction with his court appointed counsel. It is also clear there was some conflict between Tolliver and his counsel, because Tolliver felt his counsel stated he did not believe in Tolliver's innocence.
 
 
 22
 Nevertheless we find Tolliver is not entitled to habeas corpus relief. The statements made by Tolliver's counsel to the trial court were submitted to meet counsel's ethical burden to the court of not initiating perjured testimony, as well as to protect his own interests. There is no indication from the record Tolliver was prejudiced by these statements or harmed by the trial court's failure to make an inquiry into his complaints about his appointed counsel. In addition, the facts of this case indicate overwhelming evidence of guilt. In actuality, the facts clearly indicate Tolliver's counsel was quite effective in his defense. Tolliver was acquitted on one of the two charges in the indictment. Tolliver's counsel was active in his defense by questioning all witnesses and forcing the state to meet its burden of proof on all the charges in the indictment. Tolliver has not shown he was prejudiced by the trial court's failure to inquire into his reasons for requesting substitute counsel. Thus the trial court's failure to make an inquiry into Tolliver's request for substitute counsel constitutes harmless error.
 
 III. Conclusion
 
 23
 For the reasons stated above, we REVERSE the district court's granting of Tolliver's petition for a writ of habeas corpus.
 
 
 24
 MERRITT, Chief Judge, concurring.
 
 
 25
 I also agree that we should reverse the district court's grant of Mr. Tolliver's petition for writ of habeas corpus. I write separately, however, because, like Judge Wellford, I do not believe that any constitutional error occurred in this case, but, like Judge Keith, I believe that any error was harmless and that a harmless error analysis is appropriate here.
 
 
 26
 Where a defendant with court-appointed counsel requests substitute counsel, the trial judge has a duty to inquire into the reasons for the request. United States v. Iles, 906 F.2d 122, 1130 (6th Cir.1989). The defendant must then demonstrate good cause for the substitution. I agree with Judge Wellford that no constitutional error occurred in this case. Although it is a close question under the facts presented here due to the abbreviated nature of the trial court's inquiry, no constitutional error occurred concerning the inquiry into that request nor did the trial court abuse its discretion in denying Mr. Tolliver's request.
 
 
 27
 Furthermore, regardless of whether the trial court erred concerning its handling of Mr. Tolliver's request for substitute counsel, I agree with Judge Keith that any error that may have occurred was harmless. Due to the overwhelming and undisputed nature of the evidence presented against Mr. Tolliver, even if the trial judge improperly failed to appoint new counsel or failed adequately to inquire into Mr. Tolliver's request for new counsel, any error was harmless and did not affect the outcome of the trial.
 
 
 28
 For the reasons stated I agree that we should reverse the granting of the petition for habeas corpus.
 
 WELLFORD, Circuit Judge, concurring:
 
 29
 I agree that we should reverse the district court's grant of Tolliver's petition for writ of habeas corpus, but I reach this conclusion for reasons that differ from those of my colleagues. Unlike the majority, I do not believe that the trial court erred in denying Tolliver's requests for substitute counsel, and I have serious reservations about the majority's application of a "harmless error" analysis to this case.
 
 
 30
 "The right to counsel of choice, unlike the right to counsel, ... is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." United States v. Iles, 906 F.2d 1122, 1130 (6th Cir.1990) (citations omitted) (footnote omitted). In determining whether "good cause" exists, the trial court must balance the accused's right to select his own counsel against the public interest in prompt and efficient administration of justice. Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir.1985). A motion to substitute counsel is "directed to the sound discretion of the trial judge and will be reversed only for an abuse of discretion." Id. at 281 (citations omitted).
 
 
 31
 There were two episodes which may be deemed to be requests for substitute counsel. The first occurred as the judge prepared to empanel the jury. Tolliver's counsel informed the court that, in light of his client's claim of innocence, he had conducted an extensive investigation of the case. Counsel explained to the court that the investigation convinced him of Tolliver's guilt and that he had "advised [his] client that there was no defense to this case whatsoever." He added that the state was amenable to a plea agreement with respect to one count of aggravated robbery and a resulting sentence of seven to twenty-five years. He advised Tolliver to accept the deal. Counsel said that he wanted it on the record that the decision to proceed to trial was the client's alone. He stated, "the choice to go to trial in this case is his. I will do whatever I can to challenge the testimony of the prosecuting witnesses, but again there is no defense to this case." The court then inquired whether Tolliver wished to proceed with trial. Tolliver responded:
 
 
 32
 I feel like I am being railroaded and I ask for a line-up. I wanted to take a lie detector test because you see they are lies. He [counsel] don't believe me and you don't have to either, but I know that. And I and only the Lord knows who's telling the truth in this matter.
 
 
 33
 You see, I prefer to have another attorney outside, one that doesn't work for you all. Because he told me that Dawna Will [eyewitness] refused to speak to his people. And then he tells you that she made a statement.
 
 
 34
 The court informed defendant that he had no constitutional right to a line up, that a lie-detector test would be inadmissible, and that the case was ready for trial.
 
 
 35
 Tolliver's second request for substitute counsel came at the close of the state's case-in-chief. Defense counsel moved the court for judgment of acquittal, but the court denied the motion. Out of the presence of the jury, counsel then stated:
 
 
 36
 We come down to defendant's case. I would like the record to be very clear that I have advised Mr. Tolliver that he should not testify in this case. I want the record clear that I believe he is going to testify and that his decision to testify is his own. I do not believe anything that Mr. Tolliver will testify to will be the truth. I am ethically required--or prohibited from participating a great deal in his examination because of possibilities of so perjuring himself, which I think may occur if I do participate in this.
 
 
 37
 In response, Tolliver indicated that he intended to testify; at which point, the following colloquy with the court transpired:
 
 
 38
 Court: It is certainly your right to testify and--
 
 
 39
 Defendant: I wish you would give me an attorney that believes in me. They never found my fingerprints or nothing on that knife. It took nine months to get the evidence to [sic] that that they arrested me on.
 
 
 40
 Court: I want the record to reflect the fact that he thinks you should not testify.
 
 
 41
 Defendant: He also believes in my guilt. Can I put the closing statement in since he won't?
 
 
 42
 Court: I'll give that consideration when that point arrives.
 
 
 43
 Tolliver took the stand and testified on his own behalf, though counsel delivered the closing argument. The jury found Tolliver guilty of aggravated robbery but acquitted on the charge of felonious assault. The court sentenced Tolliver to a prison term of eight to twenty-five years.
 
 
 44
 In reviewing whether a trial court abused its discretion in denying a motion to substitute counsel, we look to the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication, thereby preventing an adequate defense. Iles, 906 F.2d at 1130 n. 8. First of all, neither of Tolliver's requests were timely; one came at the outset of trial and the second in the middle of trial. Granting Tolliver's requests, if there actually was a request for another counsel other than the public defender's office, would mandate a last-minute continuance and delay. The court would have been forced to seek out another attorney to accept an appointment to represent Tolliver, allowing time for substitute counsel to communicate with his client as well as time to investigate what appeared to be very strong evidence against the defendant.
 
 
 45
 The fact that the requests were untimely does not, by itself, indicate that there was not "good cause" for substitution. Calendar control cannot supersede the trial judge's obligation to ensure that the defendant receives an adequate defense. Linton v. Perini, 656 F.2d 207, 209 (6th Cir.1981), cert. denied, 454 U.S. 1162 (1982). But, in this case, the conflict between Tolliver and his lawyer did not result in a lack of communication. Quite the contrary, it appears that there was significant communication between Tolliver and his lawyer and that defendant simply did not like what his lawyer was telling him. The fact that counsel did not "believe in" Tolliver's innocence was at the heart of the conflict. While this may have been unsettling to Tolliver, it did not, in my view, constitute "good cause" for substitution. Morton v. Foltz, No. 84-1813, 1985 WL 14072, at * 2 (6th Cir. Dec. 11, 1985) (per curiam) (unpublished opinion) (denying habeas relief where defendant sought substitution of counsel because the lawyer did not trust him and noting that "[a] criminal defendant does not have a constitutional right to an attorney with whom he agrees"), cert. denied, 479 U.S. 1036 (1987). The Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983). That appointed counsel advised Tolliver to accept a plea bargain is certainly not a basis for substitution. It is the type of legal advice that an attorney should give, after investigation, to a criminal defendant in the exercise of reasonable professional judgment. Moreover, the lawyer's statements to the trial court about the honesty of his client were submitted to meet counsel's ethical burden to the court of not suborning perjured testimony. The court, in response, allowed Tolliver to testify in narrative form. Counsel effectively argued to the jury that Tolliver should not be convicted on the felonious assault charge and, despite very strong evidence to the contrary, the jury acquitted Tolliver of that offense. While there was undeniably a disagreement between Tolliver and his counsel, it did not preclude "an adequate defense," if there was any real defense to the aggravated robbery charge.
 
 
 46
 In my view, there was no "irreconcilable conflict" between Tolliver and his lawyer that prevented Tolliver from receiving an adequate defense. There was, however, a public interest in a prompt trial and the orderly administration of justice. Wilson, 761 F.2d at 280. Consequently, I do not believe the trial judge abused his discretion in denying Tolliver's separate requests for new counsel.
 
 
 47
 Nonetheless, Tolliver claims that the trial court failed to make sufficient inquiry into his reasons for requesting substitute counsel and failed to determine whether those reasons were legitimate. While I agree that the inquiry conducted by the state judge was less than it should have been, I do not believe that it was so inadequate as to render arbitrary the judge's denial of Tolliver's requests. The judge heard and considered the reasons for Tolliver's requests. The court noted that neither defendant's desire for a polygraph test nor his request for a line-up were warranted. This case is not like United States v. Jennings, 945 F.2d 129 (6th Cir.1991), modified on other grounds, 966 F.2d 184 (6th Cir.1992), in which defendants argued that the trial court violated their Sixth Amendment rights by denying their request to substitute counsel on the day before trial. There, defendants submitted letters to the judge explaining that they were dissatisfied with their lawyer. Id. at 132. The judge inquired as to the underlying reasons for their displeasure, but never ruled definitively on their request. Id. In vacating the defendants' convictions and remanding to the district court, we explained that
 
 
 48
 [u]nfortunately, the record does not reveal if the district court did, in fact, consider the letters or whether the district court ever formally made a ruling as to each defendant's request for new counsel. We cannot begin to determine whether the defendant's dissatisfaction with their appointed counsel was justified because neither defendant's letter was made part of the record.
 
 
 49
 ... Based upon the record before us we are unable to determine whether the district court discharged its responsibility of ascertaining the reasons underlying the defendants' dissatisfaction with counsel.
 
 
 50
 Id. (citation omitted). We remanded in Jennings because we had no way of providing meaningful appellate review of the trial judge's denial of the defendants' request for new counsel. The letters, which set out the reasons for defendants' dissatisfaction with their lawyer, were not in the record. We could not evaluate whether there was "good cause" for substitution. Jennings, then, presented a situation where the reasons for dissatisfaction were unknown. In the instant case, Tolliver indicated his reasons--he wanted a line-up and polygraph test; he wanted someone who "did not work for you all," someone who "believed" in him. In short, he wanted an attorney who did not consider him guilty. As pointed out above, I find none of these reasons, taken separately or in combination, to constitute good cause for substitution of counsel.
 
 
 51
 While the trial judge should have given Tolliver more opportunity to express his displeasure with appointed counsel, and should have provided a fuller rationale for rejecting Tolliver's requests, I find no constitutional error under the circumstances. The majority, on the other hand, holds that the trial judge erred by failing to adequately inquire into the defendant's requests for new counsel. Though finding court error, the majority agrees that we should deny habeas relief. The majority concludes that "harmless error" analysis applies and, therefore, the overwhelming evidence of Tolliver's guilt was sufficient to affirm his conviction. The majority supports its conclusion that harmless error analysis applies by suggesting that Tolliver's claim is based on ineffective assistance of counsel. As an ineffective assistance claim, the prejudice test of Strickland v. Washington, 466 U.S. 678 (1984), which is very similar to a harmless error analysis, would control disposition of this case. I believe, however, that Tolliver's claim is based on the Sixth Amendment right to counsel of choice. This distinction is significant, because "harmless error" or prejudice inquiries do not apply to a violation of the right to counsel of choice. Jones v. Tennessee, No. 85-6118, 1986 WL 18132, at * 1-2 (6th Cir. Oct. 10, 1986) (per curiam) (unpublished opinion) (applying, in habeas case, Strickland's prejudice test to defendant's ineffective assistance claim but not to review of his request for substitute counsel), cert. denied, 480 U.S. 948 (1987).
 
 
 52
 In United States v. Iles, 906 F.2d 1122, 1128 (6th Cir.1990), we explained that claims such as the one brought by Tolliver are not for ineffective assistance but rather the denial of the Sixth Amendment right to counsel of one's choice. See Wilson, 761 F.2d at 281 n. 10; see also Bland v. California, Dep't of Corrections, 20 F.3d 1469, 1478 (9th Cir.), cert. denied, 115 S.Ct. 357 (1994); but see United States v. Allen, 789 F.2d 90, 92 n. 4 (1st Cir.), cert. denied, 479 U.S. 846 (1986). Indeed, the accused's right to counsel of his choosing is implicated in motions for disqualification, continuances and substitution of new counsel. Wilson, 761 F.2d at 281 n. 10.
 
 
 53
 Under Strickland's test for ineffective assistance, we look to whether there was deficient attorney performance that prejudiced the defense. Strickland 466 U.S. at 687. Regardless of the question of prejudice, there was more than adequate attorney performance in this case. Defense counsel fully investigated the crime scene and evidence, as well as his client's protestations of innocence. Counsel negotiated a favorable plea agreement with the prosecution. When Tolliver rejected the plea, counsel went before the court and, pursuant to his ethical obligations under the rules of professional conduct, informed the court that he did not believe that there was a genuine defense to the case. He further informed the court that he would challenge the state's proof to the best of his ability. When, at the close of the state's case-in-chief, the court denied counsel's motion for a directed verdict, counsel informed the court that Tolliver intended to take the witness stand to testify on his own behalf. In accord with ethical obligations, counsel told the court that he believed Tolliver would perjure himself and that counsel did not intend to question his client. He persuaded the jury to acquit Tolliver on one count of the indictment despite overwhelming proof of guilt. Tolliver does not challenge the performance of his lawyer but rather the performance of the trial judge.
 
 
 54
 Because Tolliver's Sixth Amendment claim is not based on ineffective assistance of counsel, Strickland's prejudice test does not apply. In Wilson, we held that "the Strickland test, which governs situations involving the effectiveness of counsel, should not be applied to cases involving the choice of counsel." Wilson, 761 F.2d at 283. "Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice." Id. at 281. See also Bland, 20 F.3d at 1478; United States v. Collins, 920 F.2d 619, 625 (10th Cir.1990), cert. denied, 500 U.S. 920 (1991); United States v. Panzardi Alvarez, 816 F.2d 813, 818 (1st Cir.1987); United States v. Harvey, 814 F.2d 905, 926 (4th Cir.1987), reh'g granted in part, sub nom. In re Forfeiture Hearing as to Caplin & Drysdale, Chartered, 837 F.2d 637 (4th Cir.), cert. granted, 488 U.S. 940 (1988), aff'd, 491 U.S. 617 (1989). In Flanagan v. United States, 465 U.S. 259 (1984), the Supreme Court also implied, in dicta, that harmless error was inappropriate in right to counsel of choice cases. Writing for a unanimous Court, Justice O'Connor explained that
 
 
 55
 the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself. Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding. Similarly, post-conviction review is concededly effective to the extent that petitioner's asserted right is like the Sixth Amendment rights violated when a trial court ... denies counsel's request to be replaced because of a conflict of interest. No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed.
 
 
 56
 Id. at 267-68 (emphasis added) (citations omitted).
 
 
 57
 In support of a harmless error analysis, the majority relies on Brecht v. Abrahamson, --- U.S. ----, 113 S.Ct. 1710 (1993). I do not find Brecht particularly helpful in this case. Brecht is a habeas case which did not involve, in any way, the right to counsel of choice or even a Sixth Amendment ineffective assistance claim. Rather, Brecht involved a defendant's challenge to the trial court's admission of evidence, for impeachment purposes, of defendant's post-Miranda silence. Id. at 1714-15; see Bland, 20 F.3d at 1478 (rejecting the application of Brecht's harmless error standard in a counsel of choice case and "holding that Bland need not establish prejudice in order to obtain habeas relief for a violation of his Sixth Amendment right to counsel of his choice"). Thus, Brecht offers little guidance in a right to counsel of choice case.
 
 
 58
 In Iles, we held that a defendant's challenge to a trial court's denial of a request for substitute counsel is grounded in the Sixth Amendment right to counsel of choice. Iles, 906 F.2d at 1128. In Wilson, we held that prejudice or harmless error need not be shown, if and when, a defendant demonstrates the arbitrary or wrongful denial of the right to counsel of choice. Wilson, 761 F.2d at 281. In Flanagan, the Supreme Court implied that Wilson was correct. See Flanagan, 465 U.S. at 267-68. Applying Iles and Wilson, I believe Tolliver's claim must be characterized as the denial of his right to counsel of choice, not ineffective assistance of counsel. I would not apply a harmless error analysis in this case. I am not persuaded that recent Supreme Court authority, such as Brecht, supplants Iles, Wilson, and other appellate authority supporting this circuit's rationale in Sixth Amendment situations.
 
 
 59
 I concur in reversing the district court's grant of defendant's petition for habeas corpus for the reasons stated.
 
 
 
 [1]
 The facts at trial, as recited in the opinion of the Ohio Court of Appeals in this case are not disputed and must be accepted. The relevant facts taken from the Ohio Court of Appeals opinion are:
 The case proceeded to trial. Dawna Will and Roy King testified concerning what happened in the 7-Eleven store on East Main Street, Whitehall, Ohio, involving the offenses. They stated that the appellant entered the store purchased a soft drink, then he pulled a knife on Will and told her to give him the money in the cash register. [Will] said he dragged her over to cash register and it locked. Apparently, appellant released [Will] so she could unlock the register. Thereafter, she gave him a stack of dollar bills and some food stamps. Will and King testified that appellant fled from the scene. King pursued him. James Johannes, however, a neighbor, caught appellant and held him until the Whitehall police arrived. The police recovered money, food stamps and a knife at the scene.
 (J.A. at 319).