[Cite as *State v. Requel*, 2024-Ohio-1853.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-T-0062 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| RONIQUE KEWON REQUEL a.k.a. RONIEQUE KEWON REQUEL, | Trial Court No. 2023 CR 00076 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: May 13, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Gregory T. Stralka*, 6509 Brecksville Road, P.O. Box 31776, Cleveland, OH 44131 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}  Appellant, Ronique Kewon Requel aka Ronieque Kewon Requel ("Mr. Requel"), appeals from the judgment of the Trumbull County Court of Common Pleas sentencing him to an aggregate prison term of life without parole plus three years after a jury found him guilty of aggravated murder, aggravated robbery, aggravated burglary, having weapons while under disability, intimidation of a witness in a criminal case, firearms specifications for each of the foregoing offenses, and receiving stolen property.

{¶2} This case involves a home invasion in which Mr. Requel and four other men broke into the home of Adam Spaid ("Mr. Spaid") and his girlfriend, Gabrielle McCullough ("Ms. McCullough"). A gunfight ensued, resulting in Mr. Spaid's death.

{¶3} Mr. Requel raises a single assignment of error, contending the trial court denied him the right to effective assistance of counsel by failing to inquire into the basis of his pro se motion to dismiss his appointed counsel.

{¶4} After a careful review of the record and pertinent law, we find the trial court erred by failing to inquire into Mr. Requel's motion, as required by the Supreme Court of Ohio's precedent. Even assuming the truth of the allegations in Mr. Requel's motion, however, we find no resulting prejudice. The record indicates that the state presented overwhelming evidence of Mr. Requel's guilt. In addition, defense counsel was effective in its representation of Mr. Requel under the circumstances. Thus, Mr. Requel's sole assignment of error is without merit, and the trial court's judgment is affirmed.

## Substantive and Procedural History

{¶5} In the early morning hours of February 5, 2023, Mr. Spaid and Ms. McCullough were asleep in their home on Milton Street in Warren, Ohio. Mr. Spaid was a drug dealer.

{¶6} At about 1:00 a.m., the doorbell rang. The video for the doorbell camera showed a man, later identified as Christian Chaney ("Mr. Chaney"), holding a Grubhub bag.[1] Assuming the man was at the wrong house, the couple went back to sleep.

{¶7} A few minutes later, the couple heard a loud bang downstairs. Mr. Requel, Mr. Chaney, and three other men, all wearing ski masks, broke into the house through

---

1. Grubhub is a food delivery service.

Case No. 2023-T-0062

the front door. The other men involved in the offenses were later identified as Tyler Paul aka "Prada Child" ("Mr. Paul"), Johnny Russaw aka "Chubby" ("Mr. Russaw"), Andrew Colbert aka "Juice," and Joey Schuler ("Mr. Schuler"). Upon hearing the noise, Mr. Spaid retrieved his 9mm pistol and went downstairs. Ms. McCullough heard gunshots and called 911. She heard someone yell up the stairs, "Where's the money," and "I'm about to kill this bitch."

{¶8} All the intruders fled the house except for Mr. Requel. Ms. McCullough went downstairs to check on Mr. Spaid. Mr. Requel passed her going upstairs, wearing a ski mask and carrying Mr. Spaid's AR-15-style rifle that he kept in the living room. Ms. McCullough found Mr. Spaid in the kitchen suffering from a broken arm and multiple gunshot wounds.

{¶9} The Warren Police Department responded to Ms. McCullough's 911 call. Officers approached the back door and observed a trail of money. They entered and discovered Ms. McCullough and Mr. Spaid in the kitchen. Other officers observed Mr. Requel climb out of an upstairs window and onto the roof of the front porch. They entered the house, pulled Mr. Requel inside, and arrested him. The officers removed from Mr. Requel's pocket a 9mm pistol containing an extended magazine and a separate empty 12-round magazine. The officers also found $4,500 in cash and a key fob on Mr. Requel's person. In the bedroom where Mr. Requel was arrested, officers found an AR-15-style rifle (which was actually a .22 caliber) and a corresponding magazine.

{¶10} Mr. Requel told the police a series of lies regarding his actions, including that he was only there to "see a female" or to purchase marijuana from Mr. Spaid. However, surveillance video captured from Mr. Spaid's and a neighbor's cameras

3

indicated that Mr. Requel played an active role in the offenses. In particular, Mr. Requel can be seen walking around the area, signaling the others with his cell phone flashlight, and making gestures with his arms.

{¶11} Mr. Spaid was shot 10 times and sustained injuries to his liver, stomach, spleen, kidney, colon, pelvis, humerus, and femur. He was taken to the hospital but succumbed to his injuries during surgery.

{¶12} Officers matched the key fob from Mr. Requel's pocket to a Chevy Tahoe parked about three blocks away. The car belonged to Mr. Requel's cousin, who authorized the police to search it. Officers found a 9mm bullet on the front driver's seat.

{¶13} The police investigation determined that the 9mm pistol seized from Mr. Requel had been reported stolen in Poland, Ohio. Mr. Requel was prohibited from handling firearms due to a prior felony conviction for burglary.

{¶14} Ballistic testing determined that 21 casings and two projectiles, including one from Mr. Spaid's body, were all fired from the 9mm pistol seized from Mr. Requel. At least nine casings were fired from a separate, unidentified firearm, which the state opined was Mr. Spaid's 9mm pistol. Three other projectiles, including another from Mr. Spaid's body, contained characteristics that corresponded with the 9mm pistol seized from Mr. Requel; however, they were too damaged to yield conclusive results.

{¶15} DNA testing on most of the casings was inconclusive. Other casings contained a mixture of DNA profiles, with Mr. Spaid being the major contributor. DNA testing on the 9mm pistol seized from Mr. Requel contained a mixture of DNA profiles, but Mr. Requel was not a major contributor.

4

{¶16} The Trumbull County Grand Jury indicted Mr. Requel on seven felony counts: aggravated murder, an unclassified felony, in violation of R.C. 2903.01(B) and (G) (count 1); aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A) and (G) (count 2); aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1) and (C) (count 3); aggravated burglary, a first-degree felony, in violation of R.C. 2911.11(A)(1) and (B) (count 4); having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2) and (B) (count 5); intimidation of attorney, victim, or witness in a criminal case, a third-degree felony, in violation of R.C. 2921.04(B)(2) and (D) (count 6); and receiving stolen property, a fourth-degree felony, in violation of R.C. 2913.51(A) and (C) (count 7). Counts 1 through 6 each included a firearm specification under R.C. 2941.145.

{¶17} Mr. Requel was appointed counsel and entered not guilty pleas. The case proceeded to a jury trial over four days in late July/early August of 2023.

{¶18} On the morning of trial, Mr. Requel filed a pro se motion to dismiss counsel, asserting the following grounds:

{¶19} "1. Defendant avers that counsel has ignored to meet and discuss the true facts of his case and defense[.]

{¶20} "2. Counsel continued stating he would visit with defendant to discuss questions of concern in regards to footage of the incident in question.

{¶21} "3. Defendant has requested from counsel to investigate footage and witness from the bar where he was approached by someone masked up[.]

5

{¶22} "4. Defendant feels as though counsel is un-prepared to give him proper representation nor has counsel subpoena any witness other than co-defendant, when other witness who was present was let go [sic throughout]."

{¶23} Before voir dire, the trial court addressed Mr. Requel's motion, as follows:

{¶24} "The third item that I have in front of me I just see now is a pro se motion to dismiss counsel by Mr. Requel, indicating that he is – he's not satisfied with the counsel. The Court notes that we have two very expert counsel, some of the best attorneys we have in the public defender's office representing Mr. Requel. This is the date of trial. The Court will overrule any motion. I know that the defendant will be properly represented in court by counsel at this time."[2]

{¶25} The trial court subsequently filed a judgment entry overruling Mr. Requel's motion to dismiss counsel, stating:

{¶26} "Defendant's Pro Se motion seeks dismissal of his counsel. The allegations included, raised for the first time on the morning of trial, are vague and general. Defendant is represented by two highly competent, well-experienced attorneys, and nothing in the motion demonstrates that Defendant's counsel will be unable to provide proper representation."

{¶27} The state presented testimony from the responding and investigating officers from the Warren Police Department, two forensic scientists from BCI, the deputy medical examiner, and Mr. Requel's parole officer. The state submitted numerous

---

2. The trial court also overruled the defense's motion to sever count 5 (having weapons while under disability) and its motion in limine regarding video surveillance footage. The state disclosed an additional discovery item consisting of an audio recording of a jail phone call between Mr. Requel and his girlfriend. The defense objected to its admission because someone on the call was "potentially discussing trial strategy." The trial court overruled the objection "at this time." The state did not seek to admit the recording at trial.

6

Case No. 2023-T-0062

exhibits, including photos, physical evidence, the 911 recording, the firearm, DNA, autopsy reports, body camera footage, the recording of Mr. Requel's interview with police, and surveillance camera footage from multiple sources.

{¶28}  During an overnight break in the trial, juror no. 4 received a text message from an unknown person that stated:

{¶29}  "This is someone who is trying to save an innocent man from going to prison when there's proof they don't want to show you that he didn't do this.  If you're interested to see the proof, let me know.  They told him they aren't showing any of his evidence.  Just his testimony.  How is that a fair trial?  If you don't want to see, just tell me no and I'll go on my way."

{¶30}  The trial court questioned each juror separately, granted the state's request to remove juror no. 4, and the trial resumed.

{¶31}  Following the state's case-in-chief, the defense moved for acquittal under Crim.R. 29, which the trial court overruled.

{¶32}  Defense counsel informed the trial court that they had subpoenaed "a couple of people," but the witnesses' attorneys advised them to exercise their Fifth Amendment right against self-incrimination.  Therefore, defense counsel chose not to call them.  The docket indicates defense counsel issued and served subpoenas on Mr. Schuler and Mr. Chaney.

{¶33}  Mr. Requel testified in his own defense.  He said that Mr. Paul and Mr. Russaw asked him to participate in the robbery earlier in the evening, but he declined. While he was drinking and playing pool with friends at a Youngstown bar, they showed up wearing ski masks and carrying guns.  They pressured him into participating by

7

claiming he owed money and making veiled threats against his mother. When they arrived at Mr. Spaid's house, Mr. Requel attempted to persuade them to come back another day when the house was unoccupied, but they would not listen. He admitted to entering the house but denied owning the 9mm pistol or shooting anyone. Rather, at least two people were shooting at him, and he only picked up the gun off the floor. Near the end of his redirect examination, Mr. Requel commented, "I don't understand how I'm not allowed to show any screen shots or messages. I got proof of 50 different - -." The state objected, and the trial court instructed defense counsel to ask specific questions.

{¶34} Following the submission of evidence, the defense renewed its Crim.R. 29 motion for acquittal, particularly on count 2, i.e., aggravated murder in violation of R.C. 2903.01(A), arguing that the state did not present sufficient evidence of prior calculation and design. The trial court granted the defense's motion on count 2 and dismissed that count. The remaining counts were renumbered. Following deliberations, the jury found Mr. Requel guilty on all remaining counts.

{¶35} At sentencing, the trial court merged count 2 (aggravated robbery) and count 3 (aggravated burglary), and the state elected to proceed on count 2. The trial court also merged the firearm specifications. The trial court sentenced Mr. Requel to prison terms of life without parole on count 1 (aggravated murder); 11 years on count 2 (aggravated robbery) to be served concurrently; 36 months on each of count 4 (having weapons while under disability) and count 5 (intimidation of attorney etc.) to be served concurrently; 18 months on count 6 (receiving stolen property) to be served concurrently; and three years on the firearm specification to be served consecutively, for an aggregate prison term of life without parole plus three years.

8

**{¶36}** The trial court filed a judgment entry memorializing the jury's verdicts and Mr. Requel's sentences.

**{¶37}** Mr. Requel appealed and raises the following assignment of error:

**{¶38}** "The Appellant was denied his constitutional right to effective assistance of counsel when no attempt was made to determine whether trial counsel should be dismissed as requested by Appellant's motion."

## Standard of Review

**{¶39}** Mr. Requel's sole assignment of error involves the trial court's denial of his motion to dismiss his appointed counsel. A trial court's decision denying a request for new or substitute counsel is reviewed under an abuse-of-discretion standard. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999); *State v. Burrell*, 11th Dist. Lake No. 2013-L-024, 2014-Ohio-1356, ¶ 21.

**{¶40}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). "When a pure issue of law is involved in appellate review, the mere fact that the reviewing court would decide the issue differently is enough to find error." *Id.* at ¶ 67. "By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.*

## Duty to Inquire

**{¶41}** The Supreme Court of Ohio has determined that an indigent criminal defendant does not have a constitutional right to choose his court-appointed attorney;

9

rather, he is only entitled to competent legal representation. *State v. Sanders*, 11th Dist. Lake No. 2007-L-062, 2008-Ohio-1126, ¶ 10; *see e.g.*, *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001), and *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999). "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶42} The Supreme Court of Ohio has "imposed an affirmative duty upon the trial court to inquire, on the record, into a defendant's complaints regarding the adequacy of his appointed counsel." *State v. Keith*, 79 Ohio St.3d 514, 524, 684 N.E.2d 47 (1997). In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the court held, "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel * * *, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *Id.* at syllabus. The "'inquiry may be brief and minimal, but it must be made.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 139, quoting *State v. King*, 104 Ohio App.3d 434, 437, 662 N.E.2d 389 (4th Dist.1995). This "'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.'" *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 68, quoting *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (4th Dist.1998). "The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." *Deal* at syllabus.

{¶43} In *Deal*, the defendant attempted to discharge his appointed counsel at trial after the state presented its case. *Id*. at 17. The trial court recessed the jury and permitted the defendant to put his complaint on the record. *Id*. The defendant said, "I'm not getting fair representation. Give me three weeks and I will be ready to go to trial. I asked this man (his attorney) to file a motion [a notice of alibi defense] which was not filed. I asked this man to subpoena my witnesses and they are not here in court-that's not fair, that's not giving me no kind of trial." *Id*. at 17-18. The trial court determined that the defendant's complaint was belated and unreasonable because he had not indicated any dissatisfaction with his counsel until the state had rested. Id. at 18. Trial proceeded, and the jury found the defendant guilty as charged. *Id*.

{¶44} On appeal, the Supreme Court of Ohio reversed the defendant's conviction, reasoning, "From the record, it is impossible to determine whether appellant was adequately represented, because it contains nothing indicating why no witnesses were called or why no alibi defense was prepared. It is entirely possible that appointed counsel talked to those witnesses and concluded that there was no worthwhile alibi defense. * * * "[I]n the circumstances of this case, it was the duty of the trial court to see that the record contained an adequate investigation of appellant's complaint." *Id*. at 18-19.

{¶45} The court further explained, "before continuing with the trial the court should have made it clear in the record whether the appellant's action was an arbitrary failure to go forward or a legitimate claim of inadequate representation. * * * Such a record could have been made if the court had asked appellant's trial counsel why he had not filed notice of alibi or subpoenaed appellant's alleged witnesses." *Id*. at 19-20.

11

Case No. 2023-T-0062

{¶46} The court remanded to the trial court "for a reinvestigation, to be put on the record, of the appellant's claim [of] incompetent counsel. If the claim is unfounded, that court may reenter the judgment." *Id.* at 20.

### Triggering Event

{¶47} Mr. Requel contends that the following events triggered the trial court's duty to inquire: (1) the jail call between himself and his girlfriend; (2) his pro se motion to dismiss counsel; (3) the fact that someone contacted one of the jurors about other potential evidence; and (4) his comment during his testimony regarding other potential evidence.

{¶48} The trial court's duty to inquire is not triggered based on "stray comments made during the course of trial or pretrial proceedings. Rather, it * * * arises in the context of a formal motion or oral request made by a criminal defendant to remove or substitute counsel." *Grisson v. Warden, Ross Corr. Inst.*, S.D.Ohio No. 2:11-cv-194, 2011 WL 5553025, * 8 (Nov. 15, 2011). Therefore, only Mr. Requel's motion to dismiss could have triggered the trial court's duty to inquire.

### Specificity of Complaints

{¶49} In its judgment entry, the trial court stated that Mr. Requel's allegations were "vague and general," implying they did not trigger a duty to inquire. The trial court did not overrule Mr. Requel's motion on that basis in open court, and we disagree with its characterization.

{¶50} "The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel." *Carter*, 128 Ohio App.3d at 423, 715 N.E.2d 223. The trial court's duty to inquire is triggered "[i]f the defendant alleges facts which, if true, would

12

require relief." *Id.* For instance, "general objections, such as a statement that defense counsel was not representing a defendant properly, a statement that defense counsel would not fight for the defendant, or a statement that a defendant was having difficulty with his attorney, were not specific objections triggering the *Deal* inquiry." *State v. Link*, 5th Dist. Licking No. 21CA0059, 2022-Ohio-2067, ¶ 65. *See, e.g.*, *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 165; *State v. Cline*, 11th Dist. Geauga No. 2006-G-2735, 2007-Ohio-7131, ¶ 51; *State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 41; *State v. Ervin*, 5th Dist. Stark No. 2000CA00297, 2001 WL 1512190, *3 (Nov. 26, 2001).

{¶51} By contrast, in *Deal*, the defendant's allegations that defense counsel failed to subpoena witnesses and file notice of his alibi defense were deemed sufficiently specific. *See id.* at 19 ("His objection was specific, not vague or general"). Courts have also found that allegations about reviewing discovery and visiting the jail involve a potential breakdown in communication. *See Link* at ¶ 66. Thus, "when a defendant specifically alleges a breakdown in communication, the trial court has an obligation to inquire to determine whether the breakdown was of 'such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" *Id.*, quoting *Coleman*, 37 Ohio St.3d at syllabus, 525 N.E.2d 792. Further, while "[d]isagreements between attorney and client over trial strategy do not warrant substitution of counsel," *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150, "[d]ecisions about 'the viability of certain defenses' are 'within the exclusive province of defense counsel to make *after consultation with his client.*'" (Emphasis added.) *Murphy*, 91 Ohio St.3d at 524, 747 N.E.2d 765, quoting *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir.1993).

13

**{¶52}** Mr. Requel's motion alleged that defense counsel failed to meet with him to discuss the facts of the case and his defense; to visit with him to discuss the video footage; to investigate video footage and witnesses from the Youngstown bar; and to subpoena witnesses other than a co-defendant. Thus, we find that Mr. Requel's motion was sufficiently specific to trigger the trial court's duty to inquire.

### Sufficiency of Inquiry

**{¶53}** While the trial court acknowledged Mr. Requel's motion to dismiss, it did not conduct any inquiry or afford him an opportunity to explain it. Rather, the trial court focused on the belatedness of his request and its personal knowledge of defense counsel's competence. Neither justification excused the trial court's duty to inquire.

**{¶54}** In *Deal*, the Supreme Court of Ohio deemed the defendant's objection as "timely" where it occurred at the close of the state's case. *Id.* at 19. In *State v. Prater*, 71 Ohio App.3d 78, 593 N.E.2d 44 (10th Dist.1990), the appellate court found error where, "[i]nstead of * * * asking a few questions, the court denied defendant new counsel based on the court's personal knowledge of the reputation, competence and performance of this defense counsel in other cases." *Id.* at 83. Accordingly, the trial court erred by failing to sufficiently inquire into Mr. Requel's motion to dismiss counsel.

### Prejudice

**{¶55}** Mr. Requel contends that the denial of the right to counsel is a structural defect that can never be deemed harmless, citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), fn. 8. While Mr. Requel's statement of the law is correct, this case does not involve a denial of his right to counsel.

14

{¶56} The *Deal* rule involves the effective assistance of counsel. *See id.* at syllabus ("Where, during the course of his trial for a serious crime, an indigent accused questions *the effectiveness and adequacy of assigned counsel* * * *") (Emphasis added.) "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶57} As one appellate court aptly explained, "The purpose of the [*Deal*] inquiry and investigation are to allow a defendant the opportunity to place his allegations on the record, and to show sufficient investigation into their merit to allow appellate review. Thus[,] the complaining defendant is allowed the opportunity to place allegations and evidence of at least some issues of ineffective assistance of counsel on the record for review on direct appeal, rather than having those issues postponed for postconviction relief petitions, because they rely on evidence outside the record." *State v. Beranek*, 8th Dist. Cuyahoga No. 76260, 2000 WL 1867254, *5 (Dec. 14, 2000).

{¶58} By contrast, in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court of the United States established a narrow

15

exception to the *Strickland* prejudice requirement and held there are rare cases, involving right to counsel violations, that are presumptively prejudicial. The court explained that a presumption of prejudice is appropriate when counsel was "totally absent," was "prevented from assisting the accused during a critical stage of the proceeding," or "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659, fn. 25. Since this case involves counsel's alleged deficient performance, a showing of prejudice is required.

{¶59} In *Deal*, the Supreme Court of Ohio found it was "impossible to determine whether appellant was adequately represented" based on the record before it. *Id.* at 18-19. By contrast, in *Tolliver v. Dallman*, 57 F.3d 1070 (6th Cir.1995), the Sixth Circuit Court of Appeals found no prejudice where "the facts of this case indicate overwhelming evidence of guilt" and where "the facts clearly indicate [appellant's] counsel was quite effective in his defense." *Id.* at *4.

{¶60} The reasoning in *Tolliver* applies equally here. The state presented overwhelming evidence of Mr. Requel's guilt that directly contradicted his defense of being a passive, unwilling participant in the offenses. There is no reasonable probability that video footage or witnesses from the Youngstown bar would have affected the trial outcome. In addition, defense counsel was effective in its representation under the circumstances. Defense counsel actively cross-examined all of the state's witnesses and forced the state to meet its burden of proof on all the charges in the indictment. In fact, defense counsel successfully obtained dismissal of the second charge of aggravated murder against Mr. Requel. Therefore, even assuming the truth of the allegations in Mr. Requel's motion to dismiss counsel, there was no resulting prejudice.

16

Case No. 2023-T-0062

{¶61} Mr. Requel's sole assignment of error is without merit.

{¶62} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.

17