OPINION
{¶ 1} Michael H. Goodman appeals from the judgment of the Trumbull County Court of Common Pleas, based on a jury verdict, finding him guilty of numerous crimes relating to an alleged robbery spree in November 2004, and sentencing him to a total term of imprisonment of thirty-four and one-half years. We affirm.
 {¶ 2} November 8, 2004, a white male, dressed in a black coat with white striping on the sleeves, entered the Cheap Tobacco store located on North Road, *Page 2 
Warren, Ohio. He carried a silver gun, and demanded money from the clerk, Theresa Foy. She complied, handing over the register receipts and deposit money in bags labeled "Cheap Tobacco" and "44," as well as some rolled coins. The robbery was caught by surveillance tapes.
 {¶ 3} November 13, 2004, two men entered the Country Fair store located at 800 Youngstown-Warren Road in Niles, Ohio, and demanded money. One was black, and wearing a plaid jacket. The other's race was unidentified, but he carried a silver or chrome-plated gun, and wore a black windbreaker with white striping on the sleeves. The cash drawer was emptied, and the purse of one employee, the late Eleanor Slocum, taken. The robbery was caught on surveillance tapes.
 {¶ 4} During the evening of November 16, 2004, a white male, carrying a silver handgun, and dressed in a black jacket with red ski mask, entered the Niles Inn, formerly located at 1255 Youngstown-Warren Road. He tied up the night clerk, took some cash, and tried to pry open the deposit box, before stealing the surveillance tape, and departing.
 {¶ 5} Several hours later, Officer Robert Antal of the Lordstown Police Department spotted a speeding Cavalier on Highland Road, with three occupants. Officer Antal gave chase. Eventually the car stopped, two of its occupants successfully escaping. One of these was a tall, thin, white man, later identified by Officer Antal as Mr. Goodman. The Cavalier was owned by Betty Venti, Mr. Goodman's mother, who had given it to him to get it repaired. Inside the Cavalier were found the following: (1) a pellet gun matching the description of that used in the Cheap Tobacco, Country Fair, and Niles Inn robberies; a roll of coins like that taken from Cheap Tobacco; the bags *Page 3 
used to take the money from Cheap Tobacco; Eleanor Slocum's purse; the surveillance tape from the Niles Inn; and a black Ralph Lauren jacket with white striping on its sleeves. Both the gun and the jacket were identified by Ms. Foy, the Cheap Tobacco clerk, as those possessed by the robber of her store.
 {¶ 6} During the evening of November 18, 2004, a tall, thin, white male entered the Manfredi's Pizza on Vienna Avenue, in Niles. He wore a greenish ski mask, carried a shotgun, and ordered the owner and two employees onto the floor, before robbing the cash register. A customer walked in on the robbery.
 {¶ 7} During the evening of November 19, 2004, a man dressed in a tan sweater, Army jacket, and a ski mask, carrying a shotgun, entered the Pit-'N-Git on Robbins Avenue, in Niles, where he ordered the clerks, Venus Williams and Nicole Delesky, to empty the drawers. Ms. Williams managed to hit the panic button, and the police arrived only minutes following the robber's escape. Despite the ski mask, the girls claimed to have seen part of his face. When shown a "six pack" photo array containing Mr. Goodman's picture, along with those of five other men, both girls quickly identified him as the robber. The girls claimed he was in the Pit-'N-Git for up to eight minutes, while the store's surveillance tape, which caught the crime, indicates it lasted some two minutes.
 {¶ 8} November 21, 2004, Officer Antal responded to a complaint of a broken window at the residence of Captain William Penny, on Tod Avenue, in Lordstown. Captain Penny is retired from the Lordstown Police Department. His residence is located near a wooded area, some two and one-half miles from where Officer Antal had *Page 4 
stopped Ms. Venti's Cavalier November 16, 2004. A shot gun and a Buick were missing from Captain Penny's residence.
 {¶ 9} November 20, 2004, the Niles police were told at roll call that an informant claimed the N.A.U.S. club on Mason Street was to be robbed. At about 5:30 a.m., November 21, 2004, Officers Aurilio and Johnson were monitoring the club, when a Buick pulled up. The Buick sped away when Officer Aurilio pulled his car behind it. Officer Johnson recognized Mr. Goodman as the occupant of the Buick, since his picture was shown at roll call as the prime suspect in the recent robbery spree. Officers Aurilio and Johnson gave chase.
 {¶ 10} Mr. Goodman lost control of the Buick at Stanton and Third Street in Niles. Mr. Goodman abandoned the Buick, and fled, being apprehended about an hour later. The Buick was Captain Penny's; inside was Captain Penny's missing shot gun. The customer who walked in on the robbery at Manfredi's Pizza identified the shot gun as that used by the masked robber.
 {¶ 11} January 20, 2005, the Trumbull County Grand Jury filed an indictment in twenty counts against Mr. Goodman: Counts 1 through 8, aggravated robbery, felonies of the first degree in violation of R.C.2911.01(A) and (C); Count 9, kidnapping, a felony of the first degree in violation of R.C. 2905.01(A)(2) and (C); Count 10, tampering with evidence, a felony of the third degree in violation of R.C.2921.12(A)(1) and (B); Counts 11 and 12, aggravated robbery, felonies of the first degree in violation of R.C. 2911.01(A)(1) and (C), with firearm specifications pursuant to R.C. 2941.145; Count 13, aggravated robbery, a felony of the first degree in violation of R.C. 2911.11(A)(2) and (B), with a firearm specification pursuant to R.C. 2941.141; Counts 14 and 15, receiving *Page 5 
stolen property, felonies of the fourth degree in violation of R.C.2913.51(A) and (C), with firearm specifications pursuant to R.C.2941.141; Count 16, failure to comply with order or signal of police officer, a felony of the fourth degree in violation of R.C. 2921.331(B) and (C)(4), with a firearm specification pursuant to R.C. 2941.141; Count 17, aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1) and (C); Counts 18 and 19, kidnapping, felonies of the first degree in violation of R.C. 2905.01(A)(2) and (C); and Count 20, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2) and (B).
 {¶ 12} Mr. Goodman was arraigned January 28, 2005, and pleaded not guilty.
 {¶ 13} The matter was finally set for jury trial August 21, 2006, there having been several continuances, including one caused by Mr. Goodman's discharge of counsel. On or about August 2, 2006, Mr. Goodman moved the trial court for relief from prejudicial joinder, pursuant to Crim.R. 14. Mr. Goodman contended that the jury would be confused by presentation of the myriad witnesses and facts necessary to prove all of the crimes alleged in the indictment. On the morning of August 21, 2006, by agreed judgment entry, counts 1, 2, 4, 5, 6, 17, 18, and 19 were severed from the indictment. Mr. Goodman's counsel then requested a seven day continuance, in order to concentrate his attention on fine-tuning his defense of the remaining counts. While indicating its appreciation of defense counsel's dedication to his client's service, the trial court denied the continuance.
 {¶ 14} Defense counsel then requested that Mr. Goodman be allowed to address the court concerning his dissatisfaction with counsel. The learned trial judge spoke briefly with Mr. Goodman, telling him that trial would go forward that day, and that Mr. *Page 6 
Goodman was free to continue pro se, if he wished to discharge counsel again. The trial court indicated a strong suspicion that Mr. Goodman was merely angling for a further continuance. Defense counsel interjected that he and Mr. Goodman had serious disagreements about trial strategy and tactics, and that he wished to withdraw. The trial court denied this request.
 {¶ 15} August 29, 2006, the jury returned its verdict, finding Mr. Goodman guilty on all counts, save Count 9, kidnapping. September 5, 2006, the trial court filed its judgment on the verdict. September 7, 2006, Mr. Goodman moved for a new trial; which motion the trial court denied by a judgment entry filed October 16, 2006. Mr. Goodman moved for a new trial again October 24, 2006, the trial court denying this motion by a judgment entry filed November 7, 2006. By a judgment entry filed November 30, 2006, the trial court sentenced Mr. Goodman to terms of imprisonment totaling thirty-four and one-half years.
 {¶ 16} Mr. Goodman timely noticed this appeal, assigning six errors:
 {¶ 17} "[1.] The trial court erred and abused its discretion by denying Goodman his right to effective assistance of counsel, including the right to have reasonable opportunity to select and be represented by chosen counsel, and his right to a preparation period sufficient to assure minimum quality counsel, as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 18} "[2.] Goodman was denied due process of law in violation of theFifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution *Page 7 
when unduly suggestive identification procedures were employed by the police leading to unreliable identifications of Goodman.
 {¶ 19} "[3.] The prosecution engaged in a pattern of misconduct that was prejudicial and denied Goodman his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.
 {¶ 20} "[4.] It was plain error and abuse of discretion for the trial court to allow the prosecutor to cross examine Goodman about his tattoo, to allow the prosecutor to argue about Goodman's credibility arising from his tattoo's criminal inferences, and failing to make any curative instructions to the jury, thus denying Goodman his right to due process and a fair trial as guaranteed by the United States and Ohio Constitutions.
 {¶ 21} "[5.] The trial court erred and abused its discretion by allowing, over objection, jury instructions to include count numbers in excess of the actual number of charges.
 {¶ 22} "[6.] The above errors, when taken together, deprived Goodman of a fair trial as guaranteed under the due process clauses of the United States Constitution and the Ohio Constitution."
 {¶ 23} Mr. Goodman couches his first assignment of error as one involving effective assistance of counsel. However, the issues he presents actually go to two issues: whether the trial court abused its discretion in refusing to grant a continuance, on the morning of trial, for Mr. Goodman's counsel to prepare to defend the attenuated case; and whether he was denied counsel of his choice when the trial court denied *Page 8 
defense counsel's last minute request to withdraw. We answer each question in the negative.
 {¶ 24} The decision whether to grant or deny a continuance rests in the sound discretion of the trial court, and will not be overturned on appeal absent abuse of discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. An abuse of discretion is no mere error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g.,State v. Ferranto (1925), 112 Ohio St. 667, 676-678. There is no mechanical test for deciding whether the denial of a continuance is error. Cf. Unger at 67. Rather:
 {¶ 25} "[i]n evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."Unger at 67-68.
 {¶ 26} In this case, the request for continuance related to defense counsel's desire to better prepare his defense of the non-severed counts of the original, massy indictment. We agree with the trial court that no justification existed for a continuance, requested on the morning of trial, to better prepare the defense of a smaller, less complicated case. Other continuances had been granted, including at least one for Mr. *Page 9 
Goodman to change counsel; a jury pool, and witnesses were assembled, ready to go forward, as was the state; Mr. Goodman had participated in obtaining the severance of counts in the indictment.
 {¶ 27} This issue is without merit.
 {¶ 28} Mr. Goodman also finds fault with the trial court's insistence he go to trial with counsel no longer of his choice.
 {¶ 29} Decisions regarding substitution of counsel are reviewed for abuse of discretion. See, e.g., State v. Jones (2001),91 Ohio St.3d 335, 343.
 {¶ 30} "It is axiomatic that the accused enjoys the right to have assistance of counsel in all criminal prosecutions. Gideon v.Wainwright (1963), 372 U.S. 335. Implicit in this guarantee is the right to be represented by counsel of one's own choice. Powell v. Alabama
(1932), 287 U.S. 45. See[,] also, Chandler v. Fretag (1954), 348 U.S. 3. However, this right is not absolute. U.S. v. Burton (D.C. Cir. 1978),584 F.2d 485, 489. The Sixth Amendment guarantees only competent representation, not `a meaningful attorney-client relationship.'Morris v. Slappy (1983), 461 U.S. 1, 14." State v. Gallo (Nov. 24, 1986), 5th Dist. No. CA-6808, 1986 Ohio App. LEXIS 10028, at 3. Further, the right cannot be exercised in such a way as to impede the orderly administration of justice by the courts. Id.
 {¶ 31} There seems to be relatively little law in Ohio on the issue of a trial court's refusal to condone the substitution of privately retained counsel in criminal proceedings. We find four cases relating to the subject instructive: Jones; State v. Fentress (April 22, 2002), 5th Dist. No. 2001CA00155, 2002 Ohio App. LEXIS 2711; State v. Cox (May 23, 1997), 11th Dist. No. 95-T-5279, 1997 Ohio App. LEXIS 2244; andGallo. In each case, *Page 10 
the courts applied the standards used when evaluating a trial court's decision to allow or deny the substitution of appointed counsel. See, e.g., Jones at 342-343 (denial of substitution of private counsel for court-appointed counsel affirmed); Fentress at ¶ 19-26; Cox at 13-16;Gallo at 4-8. We do the same.
 {¶ 32} "`Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." United States v. Jennings (C.A.6, 1996), 83 F.3d 145, 148.'" Fentress at ¶ 23, quoting Jones at 342.
 {¶ 33} In this case, the motion to withdraw was made the morning of trial. It was untimely. The trial court did not ask Mr. Goodman directly the nature of his dissatisfaction with defense counsel. However, in its brief colloquy with him, it noted he had fired previous counsel; and that in prior discussions of the matter, it had informed him that no one attorney was "higher ranked" than another. The trial court strongly hinted its belief the attempt to substitute counsel was a delaying tactic — which is a valid reason to refuse a substitution. Cox at 15;Gallo at 6.
 {¶ 34} Finally, and most significantly, there is no indication in the record that defense counsel and Mr. Goodman failed to communicate during trial, or that defense counsel put on anything but a strong defense.
 {¶ 35} The second issue is without merit, as is the first assignment of error.
 {¶ 36} By his second assignment of error, Mr. Goodman attacks the admission of the identifications of him as the Pit-'N-Git robber, made by Ms. Williams and Ms. *Page 11 
Delesky, the clerks. Mr. Goodman had moved to suppress these identifications, which motion was denied by the trial court. Mr. Goodman finds two flaws in the identifications.
 {¶ 37} First, he believes the procedure used was impermissibly suggestive. Both Ms. Williams and Ms. Delesky picked him from "six pack" photo arrays presented by the police. Mr. Goodman believes the police should have included a second photo array without his picture.
 {¶ 38} Second, Mr. Goodman notes discrepancies between the testimony of Ms. Williams and Ms. Delesky at the hearing on the motion to suppress, and at trial. At the suppression hearing, the girls both testified the robber was in the store for eight to ten minutes. The surveillance tape of the incident, shown at trial, indicated the robbery took about two minutes. At the suppression hearing, Ms. Williams testified to the robber's big, bugged eyes, and stated they were not squinty. She testified at trial that he had small, squinty eyes. At the suppression hearing, Ms. Delesky testified she relied on her observations of the robber's nose, forehead and hairline. At trial, she admitted she did not see his forehead or nose on the surveillance tape.
 {¶ 39} "* * * [F]or identification testimony to be inadmissible as violative of due process two elements must be present: (1) unnecessarily suggestive confrontation and (2) unreliable identification. * * * SeeState v. Davis (1996), 76 Ohio St.3d 107 * * *. Second, the determination must be made looking at the totality of the circumstances. Neil v.Biggers (1972), 409 U.S. 188, 196-197, * * *; [State v.] Waddy [(1992)],63 Ohio St.3d [424] at 439. The factors to be considered in determining the reliability of the identification are the witness's opportunity to view the defendant, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's *Page 12 
certainty, and the time elapsed between the crime and the identification. Biggers and Waddy. The goal of this inquiry is to determine whether the suggestive procedures used by law enforcement, if any, created a `"very substantial likelihood of irreparable misidentification."' State v. Johnson (1991), 77 Ohio App.3d 212, 217
* * *, quoting Simmons v. United States (1968), 390 U.S. 377 * * *."State v. Combs (Sep. 25, 1998), 11th Dist. No. 97-L-049, 1998 Ohio App. LEXIS 4525, at 10-11. (Parallel citations and footnote omitted.)
 {¶ 40} First, we do not find the photo array used by the police in obtaining the identifications from Ms. Williams and Ms. Delesky impermissibly suggestive. They were given a choice of pictures, all males of the same race, and approximately the same age and hair color. Mr. Goodman points us to no authority requiring the police to present to witnesses photo arrays not including a suspect's photo in order to obtain a valid identification.
 {¶ 41} Second, under the totality of the circumstances, there are sufficient indicia of reliability in the identifications to make them admissible. While the robbery was of short duration (most are), the surveillance tape showed that the store was well-lit, that the girls were within several feet of the robber, and that his mask was ill-fitting, revealing parts of his face at times. Thus, Ms. Williams and Ms. Delesky had sufficient opportunity to observe the robber. Both Ms. Williams and Ms. Delesky made their identifications almost within an hour of the robbery, and were separated from each other when they did so. They were very certain of their identifications.
 {¶ 42} Thus, at least three of the circumstances going to the reliability of the identifications made by the Pit-'N-Git clerks tell in favor of admission of their testimony. *Page 13 
The girls were subjected to thorough cross examination. The matters complained of by Mr. Goodman seem to relate to weight of the evidence — which is the jury's province, not ours. Under the totality of the circumstances, we find no error in the trial court's admission of the identifications.
 {¶ 43} The second assignment of error is without merit.
 {¶ 44} Under his third assignment of error, Mr. Goodman argues that four incidents during trial manifest a pattern of prosecutorial misconduct, requiring reversal of his convictions.
 {¶ 45} First, he notes that prospective juror Amy Ray stated during voir dire that she was employed by Dr. David Harnett, of Cortland. While the trial court then disclosed a doctor-patient relationship with Dr. Harnett, the assistant prosecutor failed to do so. When questioned by the trial court, Ms. Ray denied any reason to favor the prosecution or defense; when asked by the assistant prosecutor if she was acquainted with him or any member of his office, she did not respond. Further, in response to Mr. Goodman's second motion for a new trial, the assistant prosecutor denied any acquaintance with Ms. Ray prior to trial.
 {¶ 46} Second, Mr. Goodman points to a portion of his cross examination. The prosecution asked him whether he had the word, "Desperado" tattooed on his back, to which he responded affirmatively. The prosecution then gave him a dictionary, and asked him to read part of the definition for that word: "A dangerous criminal. Bold outlaw." When the prosecution inquired if he was a dangerous criminal or bold outlaw, Mr. Goodman replied, "Absolutely not." He then explained that it was a reference to the popular song by the Eagles. *Page 14 
 {¶ 47} Defense counsel did not object to this line of questioning.
 {¶ 48} Third, during closing argument, the prosecution stated that both Officer Aurilio and Officer Johnson saw Mr. Goodman driving Captain Penny's Buick during the car chase of November 21, 2004. Mr. Goodman observes that only Officer Johnson testified to having recognized him in the car.
 {¶ 49} Finally, Mr. Goodman notes the prosecution once again commented on his "Desperado" tattoo during closing argument, urging the jury not to believe a dangerous criminal or bold outlaw.
 {¶ 50} "`In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266 * * *. To determine whether or not the appellant was prejudiced, a reviewing court considers the following factors: `(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.' State v. Hill (1977),52 Ohio App.2d 393, 396 * * *. In addition, where defense counsel fails to object to the prosecutor's remarks during trial, plain error will be found only if the outcome of the trial would have clearly been different but for the error. State v. Jells (1990), 53 Ohio St.3d 22 * * *."State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 24.
 {¶ 51} Application of the foregoing analysis to the incidents complained of by Mr. Goodman, individually and cumulatively, makes it impossible for us to find prosecutorial misconduct. Possibly the assistant prosecutor should have disclosed his doctor-patient relationship with Ms. Ray's employer — but there is nothing to substantiate any other *Page 15 
connection between the assistant prosecutor and Ms. Ray, or that they even knew each other. Nothing indicates the jury was tainted, depriving Mr. Goodman of a fair trial.
 {¶ 52} Similarly, the prosecution's cross examination of Mr. Goodman regarding his "Desperado" tattoo, its remarks on the subject in summation, and its mischaracterization of the testimony of Officer Aurilio, do not amount to plain error-which is the threshold Mr. Goodman must meet, since there seems to have been no defense objection to these remarks. Schlee at 24. Under Crim.R. 52(B), "plain error" affecting substantial rights may be noticed by an appellate court, even though objection was not made. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 62. However, there are three limits on an appellate court's ability to review "plain error" absent an objection: (1) there must be a genuine error, a departure from a legal rule; (2) the error must be "plain" or "obvious"; and (3) the error must have affected the defendant's substantial rights — i.e., the outcome of the trial. Id. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 53} We have previously considered whether evidence concerning tattoos is admissible on the basis of relevance. See, e.g., State v.Gall (May 2, 1997), 11th Dist. No. 96-A-0036, 1997 Ohio App. LEXIS 1781, at 8-10. The state contends questions and comments concerning Mr. Goodman's "Desperado" tattoo were relevant, in light of his defense that he was a decent man, with a bad crack cocaine problem, who was completely uninvolved with the subject robberies. *Page 16 
 {¶ 54} We note that Mr. Goodman had, admittedly, served a prior prison term after having pleaded guilty to a crime. Part of his defense was that, if he were guilty of the crimes subject of this case, he would have pleaded guilty to them, as well. Consequently, we agree that questions going to his character might be relevant. We question the purpose or effect of requiring him to read an incriminatory definition of a word tattooed on his back from a dictionary. Nevertheless, it was certainly within the discretion of trial counsel, as a matter of trial tactics, to treat the issue as one of overkill, and not object. In any case, there is nothing to indicate these brief incidents concerning Mr. Goodman's tattoo changed the outcome of his trial, as is required to show plain error. The other evidence against Mr. Goodman was formidable. Cf. Schlee at 24. Consequently, we hold that any error in the questioning of Mr. Goodman regarding his "Desperado" tattoo, or comments on it during summation by the state, was harmless at worst, not "plain."
 {¶ 55} Finally, the prosecution's statement that both officers chasing Mr. Goodman the evening he was arrested recognized him driving the car seems to have been merely a misstatement. The jury heard the actual testimony. Again, the weight of other evidence is such we cannot find this misstatement deprived Mr. Goodman of a fair trial. Schlee at 24.
 {¶ 56} The third assignment of error is without merit.
 {¶ 57} Under his fourth assignment of error, Mr. Goodman contends the trial court's failure to prevent the prosecution from cross examining him regarding his "Desperado" tattoo, and give a curative instruction, amounts to plain error. Again, while questioning whether the prosecution should have required Mr. Goodman to read the *Page 17 
definition of "desperado" from the dictionary, we have already determined that no plain error attended this issue, in disposing of the prior assignment of error.
 {¶ 58} The fourth assignment of error is without merit.
 {¶ 59} Under his fifth assignment of error, Mr. Goodman challenges the trial court's failure to renumber the counts in the indictment, and references thereto in the jury charge, over the objection of defense counsel. Instead, the trial court instructed the jury there had originally been twenty counts in the indictment, instead of twelve; and that they could neither speculate as to why eight counts had been eliminated, nor hold the matter against the defendant. Mr. Goodman believes he was prejudiced by this indication to the jury that other charges had been brought against him.
 {¶ 60} Crim.R. 12(C) provides, in pertinent part:
 {¶ 61} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following mustbe raised before trial:
 {¶ 62} "* * *
 {¶ 63} "(2) Defenses and objections based on defects in the indictment * * *[.]" (Emphasis added.)
 {¶ 64} Crim.R. 12(H) provides, in pertinent part:
 {¶ 65} "Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, * * * shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver."
 {¶ 66} In this case, eight of the original twenty counts in the indictment were severed, the morning of trial, by agreement of the parties — evidently in response to Mr. *Page 18 
Goodman's motion for relief from prejudicial joinder. Pursuant to Crim.R. 12(C)(2), Mr. Goodman should have raised any objection to the numbering of the un-severed counts at that time.[1] Not having done so, he waived any error. Crim.R. 12(H).
 {¶ 67} Of course, the trial court also had the power, "for good cause shown," to grant relief from this waiver. Crim.R. 12(H). It did not. However, that court gave the jury a curative instruction on the issue. We must presume the jury followed that instruction. Cf. State v.Stalnaker, 11th Dist. No. 2004-L-100, 2005-Ohio-7042, at ¶ 60. We further note the state had rested its case in chief prior to Mr. Goodman's objection to this issue. In such case, when the trial court fails to grant relief from waiver pursuant to Crim.R. 12(H), its decision may only be reviewed for plain error. Cf. State v. Noling,98 Ohio St.3d 44, 2002-Oho-7044, at ¶ 61-63. There is nothing in the record indicating this issue played so heavily in the minds of the jury as to have changed the outcome of trial.
 {¶ 68} The fifth assignment of error is without merit.
 {¶ 69} By his sixth assignment of error, Mr. Goodman insists that the errors at his trial, even if not individually warranting reversal of his convictions, justify application of the cumulative error doctrine. This is set forth at State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus: "[although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the error deprives a defendant of the *Page 19 
constitutional right to a fair trial." However, as we find no substantial error in the trial proceedings, we may not apply the doctrine.
 {¶ 70} The sixth assignment of error is without merit.
 {¶ 71} The judgment of the Trumbull County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., DIANE V. GRENDELL, J., concur.
[1] Pursuant to Crim.R. 12(D), the balance of pretrial motions — including those subject of Crim.R. 12(C) — are to be made thirty-five days following arraignment, or seven days prior to trial, whichever is earliest. However, the trial court has discretion to extend this time limit, "in the interest of justice * * *[.]" In a case such as this, where the parties agreed to severance on the morning of trial, we deem the trial court would have had discretion to grant a motion to renumber the indictment made that morning, pursuant to Crim.R. 12(D). *Page 1