[Cite as *State v. Burrell*, 2014-Ohio-1356.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-024** |
| CHARLES E. BURRELL, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 12 CR 000519.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Harvey B. Bruner,* Harvey B. Bruner Co., LPA, Hoyt Block Building, 700 West St. Clair Avenue, Suite 110, Cleveland, OH 44113 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Charles E. Burrell, Jr., appeals his convictions in the Lake County Court of Common Pleas for Felonious Assault, Domestic Violence, Criminal Damaging, Menacing by Stalking, Aggravated Menacing, and Telecommunications Harassment. The issue to be determined by this court is whether a defendant should be permitted to change trial counsel on the date of trial, and whether such counsel is ineffective, when he and the defendant have difficulties in their

relationship and counsel does not provide defendant all available evidence prior to trial. For the following reasons, we affirm the judgment of the trial court.

{¶2} On November 30, 2012, Burrell was indicted by the Lake County Grand Jury for Felonious Assault (Count One), a felony of the second degree, in violation of R.C. 2903.11(A)(1); two counts of Domestic Violence (Counts Two and Five), a felony of the third degree and a misdemeanor of the first degree, in violation of R.C. 2919.25(B) and (C); Criminal Damaging or Endangering (Count Three), a misdemeanor of the second degree, in violation of R.C. 2909.06(A)(1); Menacing by Stalking (Count Four), a felony of the fourth degree, in violation of R.C. 2903.211; Aggravated Menacing (Count Six), a misdemeanor of the first degree, in violation of R.C. 2903.21; and Telecommunications Harassment (Count Seven), a misdemeanor of the first degree, in violation of R.C. 2917.21(B).

{¶3} A jury trial was held in this matter on January 15 and 16, 2013.

{¶4} On January 15, prior to the start of the trial, while discussing the plea bargain offered by the State, Burrell asserted that the plea offer "wasn't truthful" because "it wasn't clearly explained that [he] wanted another attorney." He also stated that he "seldomly" got to talk to his attorney about the offer.

{¶5} Burrell explained that he wanted a new attorney, since his attorney had not been honest or truthful, lied to his mother, did not provide him all available evidence, and "tells [him] one thing but they come to another thing." Burrell stated that this behavior had been occurring since July of 2012, and he had been trying to get a different attorney since then. He admitted that he had never brought this to the attention of the court.

2

**{¶6}** Defense counsel responded that he had not presented Burrell with DVDs or videos because there were none. He noted that he showed medical records to Burrell, which were going to be used in the defense strategy to show that the victim was lying, and that this was discussed with Burrell. Counsel indicated that he was prepared to go forward with the trial.

**{¶7}** The court noted that it was familiar with defense counsel, that he was a "good trial attorney" and there was nothing to indicate otherwise to the court. The court found that Burrell did not present any specific information that his defense had been jeopardized. The court found that there was no irreconcilable breakdown in the attorney-client relationship and the trial proceeded.

**{¶8}** Amber Thornton testified that she had a three year old daughter with Burrell and that the two had dated in the past. She explained that they had a violent relationship. She described several incidents involving assaults committed by Burrell against her over a period of two years. Police testimony confirmed that Burrell had been convicted for domestic violence against Thornton in the past.

**{¶9}** Regarding the incidents that led to the charges in the present case, Thornton testified that on April 4, 2012, Burrell grabbed her hand, stuck it into a heated skillet, and held it there for a few seconds. She received treatment for this injury, but did not report to the hospital or police that Burrell had caused the injury. In July of 2012, Thornton obtained a temporary protection order against Burrell. On July 7, 2012, Burrell came to the home where she was staying, caused a disturbance, and broke the door.

**{¶10}** Following these incidents, Burrell began calling Thornton repeatedly and sent her text messages that became increasingly "intense and * * * threatening." Thornton identified the messages and calls made from Burrell in the phone records.

{¶11} On July 26, 2012, police were contacted regarding these text messages. Thornton subsequently went to the police station to show officers the text messages she had been receiving and noted that Burrell was still sending her messages.

{¶12} On that same date, Burrell had been arrested on a preexisting warrant. A video of Burrell in the police booking room on that date was played for the jury and was described by Lieutenant Randy Sevel of the Willoughby Police Department as showing Burrell sending text messages on his cell phone.

{¶13} Detective Thomas Bertone, of the Willoughby Police Department, testified that, after being provided with Thornton's cell phone, he was able to extract information regarding text messages sent from Burrell to her. He was also able to obtain that information from Burrell's phone after he had been taken into custody. Sprint cell phone records were submitted into evidence, showing the dates and times of the phone calls. The testimony and evidence established that Burrell sent Thornton many text messages early in the morning on July 26, including a message that stated "laugh it up with your friends 'cuz you not gonna see them or [her daughter] again. I swear on my life [I'm going] to kill you, if it's the last thing I do. * * * You're * * * dead." He sent additional threatening messages on that date. One message was sent at 3:54 p.m., at the time Burrell was in police custody, that stated, "I don't want to see [my daughter] ever again. * * * I hate you." Bertone testified that, starting late on July 25 and continuing on July 26, Burrell placed 96 phone calls to Thornton and sent 19 text messages.

{¶14} On January 17, 2013, the jury found Burrell guilty of all charges contained in the Indictment. This verdict was memorialized in the trial court's January 18, 2013 Judgment Entry.

{¶15} Following a sentencing hearing on February 25, 2013, a Judgment Entry of Sentence was issued by the trial court. Burrell was sentenced to a total term of seven years in prison.

{¶16} Burrell timely appeals and raises the following assignments of error:

{¶17} "[1.] The trial court's denial of appellant's request for new counsel was an abuse of discretion.

{¶18} "[2.] Appellant received ineffective assistance of counsel when counsel failed to inform the appellant of the evidence in the case and effectively communicate with the appellant."

{¶19} In his first assignment of error, Burrell argues that the trial court abused its discretion in denying his request for a new attorney, since there was a "severe breakdown in the attorney-client relationship," in that, according to him, counsel failed to provide him with evidence, was not honest with him, rarely met with him, and had been disrespectful.

{¶20} The State asserts that Burrell showed bad faith by requesting new counsel on the date of the trial and failed to provide support for the contention that there was a breakdown in the attorney-client relationship.

{¶21} "Whether a trial court errs by refusing to allow a defendant to discharge his or her counsel or seek substitute counsel is reviewed under an abuse of discretion standard." *State v. Wiley*, 11th Dist. Ashtabula No. 2012-A-0012, 2012-Ohio-5121, ¶ 73, citing *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999); *State v. Sanders*, 11th Dist. Lake No. 2007-L-062, 2008-Ohio-1126, ¶ 9.

{¶22} When confronted with a request for the appointment of new counsel, "it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of

5

the record.  The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), syllabus.

{¶23} An indigent defendant's right to counsel does not extend to counsel of his choice. *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965).  This right also does not require that appointed counsel develop and share a "meaningful relationship" with his client.  *State v. Blankenship*, 102 Ohio App.3d 534, 558, 657 N.E.2d 559 (12th Dist.1995), citing *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

{¶24} Three recognized examples of good cause which would warrant the discharge of court-appointed counsel include: "(1) a conflict of interest; (2) a complete breakdown of communication; and (3) an irreconcilable conflict which could cause an apparent unjust result." (Citations omitted.)  *State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 47.  Before a defendant is entitled to discharge appointed counsel, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶25} In the present case, on the date of the trial, Burrell argued to the court that he wanted "to get a different lawyer."  He believed that counsel is "more or less" a prosecutor who tried to convince him to take a plea deal.  He also asserted that counsel had lied to him.  When asked by the court to provide a specific example of when counsel had lied, Burrell stated that he lied about the "30 day waiver of being indefinite waiver," (sic) but did not further explain what this meant.

{¶26} The trial court then inquired as to what counsel had done to represent Burrell. Defense counsel explained that he had gone over the trial strategy with Burrell, developed the defense related to the victim's lack of credibility, and reviewed relevant records related to that defense with Burrell.

{¶27} Based on the foregoing, the trial court took the appropriate steps to address Burrell's request for new counsel. Burrell provided little in the way of concrete or specific examples of why he could not continue on with appointed counsel. His general assertions about counsel being untruthful, when coupled with counsel's assurances to the court that he had prepared for trial and had discussed the trial strategy with Burrell, provided support for the trial court's conclusion that the motion should be denied.

{¶28} Burrell takes issue with defense counsel's failure to provide him with DVDs or videos. Defense counsel stated to the trial court that there "are no DVDs or videos." However, a review of the record indicates that a DVD of Burrell sitting in the booking area of the police station, using his phone, was presented at trial and provided to defense counsel. While it does appear there was a misunderstanding or misstatement to the trial court about the existence of this video, this did not warrant appointment of new counsel. Defense counsel explained that he had provided relevant evidence to Burrell, which shows that he did not purposely withhold evidence. Further, this video only showed Burrell using his phone, and did not actually provide evidence of the charges against him, i.e., that he sent threatening messages to Thornton. The phone records and review of his own phone provided more than sufficient evidence regarding that charge. Thus, the failure to provide this video had no impact on

7

counsel's ability to represent Burrell and caused no prejudice to him.[1]  *See State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 52-53 (counsel's failure to discern a detail that did not impact the trial did not provide grounds for a change in appointed counsel).

**{¶29}** Further, we note that Burrell's request for new counsel was made on the date of the trial, a fact which lends additional support to the trial court's denial.  When a motion to substitute counsel is made on the day of trial, this "intimates such motion is made in bad faith for the purposes of delay." *State v. Haberek*, 47 Ohio App.3d 35, 41, 546 N.E.2d 1361 (8th Dist.1988).  "When a defendant's request for new counsel is made for purposes of delay or made in bad faith, the court's interest in the orderly and efficient administration of justice outweighs the defendant's right to counsel of his choice." *State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶ 20.  In fact, the trial court expressed concern with the fact that Burrell never raised his issues with counsel prior to the date of trial, especially given that Burrell stated that he had these concerns since July of 2012.  Burrell admitted that he had not attempted to file any motion for new counsel with the court during the course of the proceedings.  Based on this, the court was justified in denying his request.  *Id.* at ¶ 23 (defendant was not entitled to a last minute change in counsel, since he had "ample time to request a continuance and/or obtain private counsel of his choosing," had "never expressed any dissatisfaction with his court appointed attorney, * * * a private attorney never entered a notice of appearance," and he "failed to provide the trial court with an adequate reason why his appointed counsel should be replaced").

---

1. Although Burrell also takes issue with counsel's statement that there were no "videos or DVDs" to provide because 911 calls were played during the trial, counsel never stated that audio recordings did not exist.

**{¶30}** In light of the foregoing, we cannot find that the trial court abused its discretion in denying his request for new counsel. Even if Burrell did not get along well with counsel, "the existence of hostility or a personal conflict between the attorney and the defendant does not constitute a total breakdown so long as it does not inhibit the attorney from both preparing and presenting a competent defense." *Lewis*, 2013-Ohio-3974, at ¶ 48. There is no indication that the relationship between the two prevented defense counsel from performing his duties as an attorney. *State v. Goodman*, 11th Dist. Trumbull No. 2006-T-0130, 2007-Ohio-6252, ¶ 34 (noting the significance, in a motion for substitution of counsel, of the court considering whether defense counsel was able to communicate during trial and put on a strong defense).

**{¶31}** The first assignment of error is without merit.

**{¶32}** In his second assignment of error, Burrell argues that he received ineffective assistance of counsel, since he was not informed of all of the evidence against him and counsel did not "encourag[e] a trusting, open relationship."

**{¶33}** The State argues that defense counsel was not ineffective because he properly represented Burrell and followed an acceptable trial strategy.

**{¶34}** The Ohio Supreme Court has adopted a two-part test to decide whether an attorney's performance is below the constitutional standard for effective assistance of counsel. To reverse a conviction due to ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "In any

9

case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances." *Strickland* at 688. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶35} As discussed in the previous assignment of error, there was little evidence that defense counsel did not adequately communicate with Burrell. Burrell stated that he did not trust counsel, with limited specific examples of how counsel was actually deficient. This version of events was contradicted by defense counsel's statements to the court.

{¶36} Moreover, a review of the record reveals that counsel's representation of Burrell at the trial was not ineffective. Counsel had discussed the trial strategy with Burrell and proceeded to discredit the victim, based on Burrell's statements that she was lying. Throughout the trial, defense counsel cross-examined several witnesses, including Thornton, regarding the incident during which her hand was burned. He inquired into why she had not reported that Burrell injured her, why she had stated that it was an accident, and whether she was lying about the events that occurred. He also further questioned Thornton about the content of text messages where she was joking about her conflict with Burrell, further attempting to discredit her testimony.

{¶37} Finally, regarding trial counsel's failure to provide Burrell with the DVD presented at trial, we again apply the analysis discussed above. The DVD shows only that Burrell was in the police booking room, holding his phone. It is not clear exactly what he is doing or whom he may be text messaging. Any potential error by counsel in failing to provide the video to Burrell was outweighed by the overwhelming evidence supporting the charges for which this evidence would be relevant, i.e., the telephonic

10

harassment and menacing charges. This evidence included both cell phone records of repeated calls, records retrieved by police from the cell phone that showed the content of all of the text messages, as well as Thornton's testimony regarding the messages. *See State v. Tipton*, 11th Dist. Portage No. 2012-P-0072, 2013-Ohio-3207, ¶ 46 ("even if trial counsel's conduct was ineffective for any of the foregoing alleged deficiencies, he failed to prove prejudice in light of the overwhelming and undisputed evidence of his guilt"). Even if Burrell had seen the DVD, it would not have changed the outcome of the trial, and we can find no prejudice.

**{¶38}** The second assignment of error is without merit.

**{¶39}** For the foregoing reasons, Burrell's convictions for Felonious Assault, Domestic Violence, Criminal Damaging, Menacing by Stalking, Aggravated Menacing, and Telecommunications Harassment in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.