[Cite as *State v. Daniels*, 2025-Ohio-1930.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                       :

    v.                                               :

                             No. 114259

DEMAREA DANIELS,                           :

    Defendant-Appellant.                     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART AND VACATED IN PART
**RELEASED AND JOURNALIZED:** May 29, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687348-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mason McCarthy, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Demarea Daniels ("Daniels") appeals his convictions for making false alarms, identity fraud, and aggravated menacing. He assigns four assignments of error for our review:

1.  Defense counsel provided ineffective assistance of counsel.

2.  Appellant suffered plain error by introduction of search warrant photographs.

3.  Appellant's conviction for making false alarms is not support by sufficient evidence.

4.  Appellant's convictions are against the manifest weight of the evidence.

{¶ 2} After a thorough review of the applicable law and facts, we vacate Daniels's conviction for making false alarms but affirm the remainder of his convictions.

## I.  Factual and Procedural History

{¶ 3} In September 2023, the Garfield Heights Police Department received a 911 call where a person stated that he "need[ed] help" and that he was "giving up on life" and "just want[ed] to blow up the police department."  (State's exhibit No. 1.) The caller claimed to be an individual named D.W. and provided D.W.'s name, address, and employer.

{¶ 4} Police officers responded to D.W.'s home and place of employment, Amazon, to investigate his connection to the threat.  They questioned D.W. about the call.  He told the officers that he had been at work and had not made any calls.

{¶ 5} Within the same time period, Lieutenant M.B. and Detective J.S. received threatening text messages on their personal cell phones from an individual stating that he was D.W.  Police were able to track the call records through a service called TextNow, which provided the email address associated with the account that

had made the call and sent the text messages. The email address was demareadaniels042@gmail.com.

{¶ 6} D.W. later went to the Garfield Heights Police Department where he listened to a recording of the 911 call and identified Daniels as the caller. He had been Daniels's supervisor at Amazon for approximately a year and a half. He further identified Daniels from a photo array.

{¶ 7} Daniels was charged with one count of making false alarms, a felony of the third degree, in violation of R.C. 2917.32(A)(3); one count of identity fraud, a felony of the fifth degree, in violation of R.C. 2913.49(B)(1); and two counts of aggravated menacing, misdemeanors of the first degree, in violation of R.C. 2903.21(A).

{¶ 8} Prior to trial, Daniels's counsel moved to withdraw from the case, citing a breakdown of the attorney-client relationship. Specifically, Daniels's attorney stated that he could not constructively communicate with Daniels and, therefore, could not represent him due to his receipt of excessive and irrational text messages from Daniels. The court granted the motion to withdraw, and new counsel was appointed.

{¶ 9} Daniels waived his right to a jury trial, and the matter proceeded to a bench trial.[1] The State presented the testimony of D.W., M.B., J.S., and Kyle Zayac, a communications officer with the Garfield Heights Police Department.

---

[1] Daniels was also indicted on charges in a separate case that was joined with the instant matter for trial. He was found not guilty of the crimes charged in the other case, and thus nothing relative to those charges will be addressed in this appeal.

{¶ 10} Daniels did not present any evidence or witnesses on his own behalf.

{¶ 11} The court found Daniels guilty of making false alarms (Count 1), identity fraud (Count 2), and two counts of aggravated menacing (Counts 3 and 4). The court sentenced Daniels to a prison term of 18 months on Count 1, 12 months on Count 2, and 180 days for Counts 3 and 4. All sentences were ordered to run concurrently.

{¶ 12} Daniels then filed the instant appeal.

## II. Law and Analysis

{¶ 13} For ease of analysis, we will address the assignments of error out of order.

## A. Photographs

{¶ 14} In his second assignment of error, Daniels argues that the trial court committed plain error by admitting 100 photographs that prejudiced him and had no probative value. Specifically, Daniels argues that photographs of his apartment were admitted that contained no relevant evidence but showed "nothing except food containers strewn throughout, piled in closets, and kept on the floor." He argues that these photos were cumulative and had no purpose except to demonstrate that Daniels had an iPhone.

{¶ 15} The State contends that the photographs were relevant to demonstrate the efforts made by police to recover the cell phone used in the offense and to show that no one else was residing in the apartment who could have made the calls.

{¶ 16} Decisions on the admissibility of photographs are left to the sound discretion of the trial court. *State v. Lang*, 2011-Ohio-4215, ¶ 138; *State v. Slagle*, 65 Ohio St.3d 597, 601 (1992). An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *State v. McFarland*, 2022-Ohio-4638, ¶ 21 (8th Dist.), citing *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 17} As Daniels acknowledges, we can only consider this assignment of error under a plain-error review since Daniels's trial counsel did not object to the admission of the photographs.

> Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. However, an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at 97.

*State v. Bouie*, 2019-Ohio-4579, ¶ 42 (8th Dist.).

{¶ 18} A review of the exhibits illustrates that a fair number of the photographs appear to have been irrelevant, particularly when they were not evidence of Daniels's identity or the commission of the crimes. Notwithstanding that fact, the case was tried to the bench. Under Ohio law, in a bench trial, "the trial court is entitled to the presumption of regularity, that is, the trial court is presumed to know and follow the law in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Shropshire*, 2016-Ohio-7224, ¶ 37 (8th Dist.), citing *State v. Eley*, 77 Ohio St.3d 174, 180 (1996), citing *State v. Post*, 32 Ohio St.3d 380 (1987). "In other words, in an appeal from a bench trial, we presume that a trial court relies only on relevant, material, and competent evidence in arriving at its judgment." *Id.*, citing *id.* at 180.

{¶ 19} Daniels has not shown how the outcome of the proceedings would have been different had the photographs not been admitted. We further note that Daniels was acquitted of the charges in the other case. Accordingly, Daniels has not demonstrated plain error and his second assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶ 20} In his first assignment of error, Daniels argues that his first trial counsel was ineffective by maligning him to the court by essentially informing the court of a "prior bad act" within his motion to withdraw. He further contends that his second trial counsel was ineffective because he (1) failed to move to suppress an unreliable identification, and (2) failed to object to the admission of prejudicial photographs.

{¶ 21} In order to establish ineffective assistance of counsel, a defendant must demonstrate (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation; and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.

### 1. First trial counsel

{¶ 22} Daniels argues that his first trial counsel caused prejudice to him by the statements set forth in the attorney's motion to withdraw from the case. Specifically, Daniels notes that, in his motion, the attorney cites Daniels's "irrational" and "confused" text messages containing "delusional resolutions to his cases." He maintains that this conduct coincided with the allegations of the complaint and constituted a "prior bad act" before trial even started. Daniels contends that the error was compounded because the matter was tried to the bench and the same judge that ruled on the motion to withdraw also determined Daniels's guilt.

{¶ 23} Good cause must be demonstrated to warrant discharge of a court-appointed attorney. *State v. Sims*, 2018-Ohio-388, ¶ 17 (8th Dist.). A "complete breakdown of communication" has been held to be an example of good cause. *Id.*, citing *State v. Burrell*, 2014-Ohio-1356, ¶ 24 (11th Dist.). Here, Daniels's first trial counsel outlined in his motion the communication issues he had been having with

Daniels. The motion set forth a breakdown in communication, stating that "the inability to constructively communicate with Mr. Daniels makes representing him difficult, if not impossible." We cannot say that informing the court of issues that were compromising counsel's representation of Daniels caused his performance to fall below an objective standard of reasonable representation.

{¶ 24} Moreover, Daniels has not shown that the outcome of the trial would have been different if his first counsel had not made the statements regarding Daniels's conduct in his motion to withdraw. In finding Daniels guilty of all counts, the court noted that the evidence produced had proven each and every count beyond a reasonable doubt. As noted above, "in a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence." *State v. Willis*, 2008-Ohio-6156, ¶ 15 (8th Dist.), citing *State v. Post*, 32 Ohio St.3d 380, 384 (1987). Daniels has not demonstrated that the court improperly considered the statements in the motion when determining its verdict.

## 2. Second trial counsel

{¶ 25} Daniels argues that his second trial counsel was ineffective because he failed to move to suppress the identification made by D.W. He argues that D.W. was told that Daniels was being investigated prior to identifying Daniels from a phone call recording and a photo lineup. He contends that D.W. consequently had a preconceived notion of who the person on the phone and in the photo array would be.

{¶ 26} The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record demonstrates that the motion would have been successful if made. *See State v. Moon*, 2015-Ohio-1550, ¶ 28 (8th Dist.), citing *State v. Finch*, 2012-Ohio-4727, ¶ 28 (5th Dist.) ("Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted."); *State v. Griffin*, 2013-Ohio-5389, ¶18 (10th Dist.) ("In order to establish ineffective assistance of counsel based upon failure to file a motion to suppress, a defendant 'must prove that there was a basis to suppress the evidence in question.'"), quoting *State v. Brown*, 2007-Ohio-4837, ¶ 65, citing *State v. Adams*, 2004-Ohio-5845, ¶ 35.

{¶ 27} Courts determine the admissibility of challenged identification testimony using a two-step process. First, the defendant must demonstrate that the identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. *State v. Bailey*, 2014-Ohio-4684, ¶ 49 (8th Dist.), citing *State v. Page*, 2005-Ohio-1493, ¶ 12 (8th Dist.). The issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. *Bailey* at *id.*, citing *State v. Wills*, 120 Ohio App.3d 320, 324-325 (8th Dist. 1997), citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

{¶ 28} We disagree with Daniels's assertion that his second trial counsel should have moved to suppress D.W.'s identification. The evidence stablished that

D.W. was well acquainted with Daniels, who was one of D.W.'s associates while employed at Amazon. D.W. testified that he was Daniels's supervisor for approximately a year and a half and that he had spoken to Daniels "face-to face" "more than 30 to 40 times[ ]" and that he was "absolutely" familiar with Daniels's voice. (Tr. 60.) We cannot find that the identification procedure was unnecessarily suggestive when D.W. was already familiar with both Daniels's face and voice.

{¶ 29} Even if we were to find that the identification process was unnecessarily suggestive, Daniels cannot demonstrate the second prong — that the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. There is no evidence of a mistaken identification here. Again, D.W. was very familiar with Daniels, having supervised him at his employment for approximately a year and a half.

{¶ 30} Thus, we cannot find that the record contains any evidence that would have justified the filing of a motion to suppress, and filing such a motion would have been futile. "[T]he failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Nelson*, 2017-Ohio-5568, ¶ 79 (8th Dist.), citing *State v. Knox*, 2013-Ohio-1662, ¶ 20 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.).

{¶ 31} Finally, Daniels contends that his second trial counsel was ineffective for failing to object to the admission of prejudicial photographs of his apartment. As we have determined above that Daniels did not demonstrate that the photographs were prejudicial, his second trial counsel cannot be ineffective for failing to object.

{¶ 32} Daniels did not receive ineffective assistance by either of his trial counsel, and his first assignment of error is overruled.

## C. Sufficiency of the Evidence

{¶ 33} In his third assignment of error, Daniels argues that his conviction for making false alarms was unsupported by sufficient evidence. He contends that the statute under which he was indicted, R.C. 2917.32(A)(3), requires that the offense that was allegedly reported had occurred in the past, while in the instant case, Daniels stated that he "want[ed] to blow up" the police department. He maintains that he was expressing a future desire and, therefore, the evidence was insufficient to show that he had reported an alleged offense that had not occurred.

{¶ 34} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). When reviewing the sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 35} R.C. 2917.32(A)(3) prohibits any person from reporting to "any law enforcement agency an alleged offense or other incident within its concern, knowing that such offense did not occur." Count 1 of the indictment charged Daniels with "report[ing] to any law enforcement agency an alleged offense or other incident

within its concern, knowing that such offense did not occur." The count contained a furthermore clause, which stated that "said conduct pertained to a purported, threatened, or the actual use of a weapon of mass destruction."

{¶ 36} As the Supreme Court of Ohio has instructed:

> A court's objective when construing a statute is to give effect to the legislature's intent. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 10. We seek legislative intent first in the statutory language. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. If the statutory language is clear and unambiguous, we apply it as written, giving effect to its plain meaning. *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 14. Further interpretation is necessary only when the statutory language is ambiguous and subject to varying interpretations. *Chappell* at ¶ 16. When a statute defines a criminal offense, we construe the statute strictly against the state and liberally in favor of the accused. R.C. 2901.04(A).

*State v. Bryant*, 2020-Ohio-1041, ¶ 12.

{¶ 37} We agree that the State did not present sufficient evidence to meet the elements of R.C. 2917.32(A)(3). Ohio courts have consistently held that a conviction under this statute requires the State to prove that the defendant "made [a] false report." *State v. Arnold*, 2023-Ohio-1223, ¶ 13 (1st Dist.), citing *E. Cleveland v. Pratt*, 10 Ohio St.2d 75, 76 (1967) (explaining that a person is guilty of giving a false report to the police department when the person telephones the police and tells them that a man has broken into her apartment, when in fact the report is false); *Centerville v. Knab*, 2019-Ohio-1903 (2d Dist.) (sufficient evidence that defendant had knowledge of the fact that there was no active shooter emergency or injured person at his residence when he contacted 9-1-1 because defendant's mother

repeatedly told him that there was no one in the house with a gun); *State v. Sommer*, 2003-Ohio-5022 421, 423 (5th Dist.) (police chief made false report that escaped party shot through his windshield and shot police chief in attempt to cover up his accidental shooting of his vehicle's windshield); *State v. Barnwell*, 1981 Ohio App. LEXIS 14240, 4 (12th Dist. Apr. 1, 1981) (affirming a conviction for violating R.C. 2917.32(A)(3) where "[i]t is uncontroverted that the appellant contacted the Batavia Police officials and reported to them a robbery which had not occurred and which he knew had not occurred"); *State v. Freily*, 1997 Ohio App. LEXIS 5475, 5 (3d Dist. Dec. 5, 1997) ("The essential element to be proven [under R.C. 2917.32(A)(3)] is knowledge of the reporter that the offense reported had not occurred.").

{¶ 38} Here, Daniels stated that he "need[ed] help," was "giving up on life," and "want[ed] to "blow up the [Garfield Heights] police department." (State's exhibit No. 1.) We agree with Daniels's assertion that his statement regarding blowing up the police department was not prohibited by R.C. 2917.32(A)(3) because that subsection concerns the report of an event that a person knew *had not actually occurred* — not an expression regarding an event that could possibly happen in the future. Any reference to threats or future conduct is noticeably absent from R.C. 2917.32(A)(3). Accordingly, we find that the State did not meet its burden of

production with regard to this count.[2]  Daniels's third assignment of error is sustained, and his conviction for making false alarms is vacated.

### D. Manifest Weight of the Evidence

{¶ 39} In his fourth assignment of error, Daniels argues that his convictions were against the manifest weight of the evidence because the court relied upon inaccurate testimony, registration records, prejudicial photographs, and tainted identification testimony.

{¶ 40} In determining whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  We will reverse a conviction as against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. McLoyd*, 2023-Ohio-4306, ¶ 40 (8th Dist.), quoting *Thompkins* at 387.

{¶ 41} We have already determined that there was insufficient evidence to support Daniels's conviction for making false alarms.  With regard to the other counts, we found no merit to Daniels's assertions regarding the photographs or

---

[2] As noted by Daniels's counsel at oral arguments, it appears that R.C. 2917.32(A)(1), which prohibits "initiat[ing] or circulat[ing] a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that the report or warning is false and likely to cause public inconvenience or alarm," may have been more applicable to the facts of this case.

D.W.'s identification of Daniels. D.W. positively identified Daniels's voice on the 911 call, and the call and text messages were traced back to a TextNow account that was associated with Daniels's name and email address. Coupled with the bench-trial presumption that the trial court knows and follows the law and relies only on relevant material and competent evidence in arriving at its judgment, we find that the record does not support that this is the exceptional case where the evidence weighs heavily against conviction.

{¶ 42} Accordingly, Daniels's convictions on Counts 2, 3, and 4 were not against the manifest weight of the evidence and his fourth assignment of error is overruled.

{¶ 43} Daniels's conviction for making false alarms is vacated. The remainder of his convictions are affirmed.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR